UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK         20-2152 LDH PK
-------------------------------------------------------------x
ALBERT CRAIG,                          **Memorandum of Law in Opposition**
                      Plaintiff,    **To Defendant Elias Husamudeen's**
                                      **Motion for Sanctions**

      -against-

THE CITY OF NEW YORK, (NYC)
ELIAS HUSSAMADEEM,
NYC DEPARTMENT OF CORRECTIONS
COMMISSIONER CYNTHIA BRANN,
MARIA GUCCIONE EXECUTIVE DIRECTOR
OF LABOR RELATIONS AT
NYC DEPARTMENT OF CORRECTION, and
DEPUTY WARDEN DESIREE HILL
                            Defendants.
-------------------------------------------------------------x


**Memorandum in Opposition to Defendant's Motion for Sanctions**

                                        Fred Lichtmacher
                                        Attorney for Plaintiff Albert Craig
                                        The Law Office of Fred Lichtmacher PC
                                        116 West 23rd Street Suite 500
                                        New York NY 10011
                                        (212) 922-9066

# TABLE OF CONTENTS

**Table of Authorities** — **i**

Introduction — 1

Brief Summary of Facts — 4

The Defendant's Arguments — 6

Mr. Husamudeen Acted in Concert with the City Defendants and therefore Can Be Held Liable in the Instant Matter — 7

This Action Is Not Brought to Support Mr. Craig's Run for the Presidency of COBA — 10

The Duty of Fair Representation is Not the Proper Cause of Action nor is it What Mr. Craig Sought to Pursue in this Forum — **11**

**Defendant's Res Judicata Argument is Entirely Off Point** — **12**

Conclusion — 12

# TABLE OF AUTHORITIES

**CASES**

Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)..............................................................10

Cranley v Natl. Life Ins. Co., 318 F3d 105, 108 [2d Cir 2003] ................................9, 10

Feliciano et al v Seabrook et al, 712894/2019 Queens S Ct......................................12

Figueroa v Foster, 864 F3d 222, 224 [2d Cir 2017])...................................................11

Flagg v. Yonkers Sav. & Loan Ass'n, 396 F.3d 178, 187 (2d Cir. 2005) .................9

Garcetti v. Ceballos, 547 U.S. 410 (2006).................................................................4,5

Horvath v. Westport Library Ass'n, 362 F.3d 147, 154 (2d Cir. 2004).....................10

In re Charny, 257 A.D.2d 18 (1st Dep't. 1999) ............................................................11

Jiminian v. Seabrook, 760 Fed.Appx.38 (2d Cir. 2019).............................................12

**STATUTES**

42 U.S.C. §1983. ......................................................................................................5,7

**Introduction**

This First Amendment action was brought to defend the Plaintiff's right to speak out about three serious matters of public concern. The first is the possible corruption in the handling of Correction Officers Benevolent Association (COBA) members' retirement funds. The second is the Department of Corrections (DOC)'s actions causing the spread of the corona virus on Rikers Island and ultimately in the City at large. The third is the City intentionally overlooking violence on Rikers Island resulting in violent inmates being released onto the streets of New York. After speaking out about these matters, including to several outside agencies, the Plaintiff was retaliated against by Defendant Husamudeen as well as by the City Defendants.

**The Motivation for This Sanction Motion**

Defendant Husamudeen brings this Motion for sanctions alleging this Complaint is frivolous. Defendants are aware Mr. Craig has evidence of arguably corrupt acts engaged in by Defendant Husamudeen. The lawyers for the Correction Officers Benevolent Association (COBA), including Marc Steier, Vincent O'Hara and Nathaniel Charny, have serious concerns about the allegations in the Complaint as they refer to their possible involvement to what at a bare minimum could be described as unsavory acts. Attorney Nathaniel Charny is a convicted felon. All the attorneys are alleged to have looked the other way at what are arguably criminal activities conducted with their knowledge, in some instances involving large sums of money from COBA members' retirement fund.

The twin motivations in bringing this Motion, were to draw attention away from the activities the COBA attorneys are desperate to not see discussed publicly, as well as for Defendants' attorneys to get a look at Mr. Craig's defense for the upcoming 12(b)(6) Motions to

-1-

dismiss. As the standard for granting sanctions under any of the rules cited by the Defendant is high, and as this Complaint is brought in good faith, with valid support in the facts and in the law, sanctions are not appropriate. Ironically, it is this Motion which actually could be considered sanctionable, but Plaintiff prefers to proceed with litigating what he has complained about in his Complaint.

One attorney discussed in the Complaint, Marc Steier, has boasted about committing possibly illegal acts. (Craig Declaration). Marc Steier threatened Mr. Craig after he complained about large sums of money designated for the COBA retirement funds not being accounted for. Mr. Steier is so concerned about this lawsuit, that despite his lack of any standing, he has written to this attorney to try to convince me to withdraw the Complaint. Mr. Steier tried several arguments. He feigned concern for Mr. Craig's financial well being, he alleged this matter was brought for an improper purpose, that it is brought to harass, that it is frivolous, vexatious, and not rooted in legitimate issues in conflict. (Lichtmacher Declaration). The Plaintiff is anxious to present the mountain of evidence he has to support his claims. Mr. Steier has reason to be concerned. Paragraph 63 of the Complaint is particularly troubling, as the Defendant and the lawyers attempted to get the Executive Board of COBA to ratify a $6,000,000 settlement, knowing said settlement was actually for $7,000,000. A few of the activities concerning the the COBA lawyers discussed in the Complaint are the following:

> 63. At the point in time when Mr. Husamudeen and lawyers Marc Steier, Nathaniel Charny, Vincent O'Hara as well as treasurer Mike Mieallo all knew the actual recovery was to be seven million dollars, the resolution was still proposed to the Executive Board to approve a six million dollar settlement, without mention of the missing one million dollars.
>
> 105. Upon information and belief, Mr. Steier received from Husamudeen, a $30,000 raise

without Board approval.

112. On April 11, 2019 Plaintiff contacted the NYS Attorney General at which time he complained about (attorney) Mark Steier having, what was in his eyes, a no show job courtesy of Mr. Husamudeen, as he was not reporting to the Union headquarters to work.

115. Mr. Steier had registered with the bar association as practicing at 75 Broad Street, but had no office at that location, neither was he reporting to the Union's location.

120. Marc Steier had bragged to people at COBA about his having hacked into emails when he was working with Kohler and Isaac.

181. In communications beginning on December 18, 2019 between Mr. Craig and COBA attorneys, Mr. Steier, Mr. Charny Mr O'Hara, it was discussed that a deal was struck between Mr. Rechnitz and COBA for COBA to recover 1.2 million dollars from Mr. Rechnitz.

182. Upon information and belief, at no previous time had Mr. Husamudeen or any of the COBA lawyers informed members of the Board about the deal and the exact amount of money recovered in the first installment or in any subsequent installment.

183. When Mr. Craig repeatedly questioned all the COBA attorneys, Mr. Steier, Mr. Charny, and Mr O'Hara, in sum and substance about why the Board had not been informed earlier that there was a settlement with Mr. Rechnitz, or the amount recovered to date, they refused to respond with clear and concise answers.

186. Mr. Craig questioned Mr. Steier's ethics for failing to answer his questions about the Agreement with Mr. Rechnitz.

187. Mr. Steier responded with an email that started with; "Mr. Craig this email is just you and I, A final chance to work in concert, if you will."

188. The email continues with a long recitation by Mr. Steier about how good to the Union Mr. Steier had allegedly been, and ends with what Mr. Craig perceives to be a threat; "**(t)his is my last request to you on this matter; I make it because I see this going very poorly for all concerned** - not the least you and I and the entire Union leadership that now more than ever NEEDS to come together."

189. The Plaintiff interpreted this as a threat and did report that perceived threat to an outside agency. (Exhibit. "1")

After Mr. Craig's Complaint was filed, Mr. Steier, who had not timely reregistered with

the bar, registered and changed his reported address to COBA's office. (Lichtmacher Declaration).

The facts surrounding the settlement between COBA and Mr. Rechnitz arising from the Platinum Partners scandal, were suspicious:

> 80. On December 6, 2019 Mr. Craig had found out from the newspapers about a $240,000 installment allegedly to be paid to COBA towards the 1.2 million dollar settlement with Mr. Rechnitz arising from the Platinum Partners scandal.

Mr. Craig, as a member of the Executive Board of COBA, demanded an explanation for the lack of disclosure. Marc Steier responded to Mr. Craig's allegations of wrongdoing on December 18, 2019 writing to Mr. Craig that "...an unsolicited partial payment (nowhere near 1.2 million as reported untruthfully) without any legal guarantees - and without any vote of the board and annuity trustees - was found by the receptionist on December 9, 2019 — slipped through the mail slot after close of business." (Exhibit "2" Steier email). The attorneys apparently were not interested in reporting to the Board about the money received until Mr. Craig saw the article. Several days after the payment was allegedly "slipped through a slot" receipt of the money was finally being discussed. Mr. Craig never saw a Board resolution regarding a settlement with Mr. Rechnitz. (Craig Declaration).

**Brief Summary of Facts**

During all times relevant Mr. Craig was a member of the Executive Board of COBA of which Defendant Husamudeen was President. Mr. Husamudeen recently placed last in his reelection bid, and he was removed from the presidency. (Craig Declaration).

Mr. Craig has spoken out about questionable activities regarding COBA funds as well as regarding actions the City and DOC have failed to take to protect correction officers, inmates,

and ultimately the citizens of the City as a whole, from being exposed to Covid and violent inmates the City is releasing early. Mr. Husamudeen retaliated against the Plaintiff due to the ramifications Mr. Craig's speech can have on him personally. The named Defendants and other employees at DOCS, have been complicit in retaliating against Mr. Craig because of the damage Mr. Craig's speech can do to the City's planned sale of Rikers Island. Said sale may bring the City in excessive of thirty billion dollars. (Exhibit "1" ¶30). Several of Mr. Craig's Complaints have been made to outside agencies, a necessary element of a First Amendment claim of retaliation, post the United States Supreme Court ruling in <u>Garcetti v Ceballos</u> 547 U.S. 410 (2006). Mr. Craig's First Amendment claims are largely ignored in Defendant's papers.

The planned sale of Rikers would result in the City using four smaller jails, collectively incapable of housing the number of inmates that Rikers is capable of housing which is up to fifteen thousand inmates. (Exh. "1" ¶14) With the smaller jails, NYC is planning to let go of correction officers and indiscriminately free inmates, acts which are already in progress. (Craig Declaration). This year alone the City plans to reduce the number of correction officers by 648. (Exh. "1" ¶23; Craig Declaration).

Mr. Craig's protected speech could interfere with the planned release of inmates, necessary to the City's planned sale of the Island. The City cannot responsibly release violent inmates or acknowledge the enormity of the Covid problem at Rikers while planning to release numerous inmates into the general public.

In their mutually beneficial relationship, the City looked the other way at Mr. Husamudeen's questionable activities and the City Defendants have acted to protect, aid and abet Mr. Husamudeen while he retaliated against Mr. Craig for exercising his right to free speech.

Most of Mr. Husamudeen's acts of retaliation against the Plaintiff were on matters the City Defendants ultimately had control over and yet they either failed to take action or they acted affirmatively against Mr. Craig. (Craig Declaration).

One of Defendant's off point arguments is that COBA is not a state actor and therefore cannot be sued pursuant to 42 U.S.C. §1983. The most glaring problem with this argument is that Mr. Craig has not sued COBA. To "correct" this inconvenient fact, the Defendant argues Mr. Craig should have sued COBA; something he specifically chose not to do. This is a poor attempt at erecting a straw man easily knocked down. Defendant also alleges Plaintiff should have sued for denial of fair representation-which is something Mr. Craig specifically chose not to do.

**The Defendant's Arguments**

No effort is made to rebut Mr. Craig's allegations. Instead, the Defendant makes collateral attacks claiming the Complaint is brought pursuant to the wrong causes of action; it is brought in bad faith; it is barred by res judicata; brought against the wrong Defendants; and was brought to aid Plaintiff's campaign for the Presidency of COBA. These arguments are incorrect. Instead, it is this Motion that is brought for the frivolous purposes addressed above.

Mr. Craig goes to great lengths in his Complaint to explain how this action is **not** predicated on the actions of COBA but rather on the actions of COBA's now former president Mr. Husamudeen, acting beyond the authority given him by the presidency and with the help of the City Defendants:

> Defendant ELIAS HUSAMUDEEN is a DOC officer and the President of COBA and he is sued herein in his capacity as an individual and none of the allegations herein brought against him are attributed to COBA, but rather to ELIAS HUSAMUDEEN acting as an individual outside of his authority as President of COBA, and without the permission of the COBA Board. (Exh. "1" ¶ 9; See also ¶¶ 90; 96; 97; 105; 122; 124 & 135)

Some of Mr. Husamudeen's actions taken without COBA approval against Mr. Craig, included, but were not limited to the following:

> 69. Once elected to the Executive Board all COBA Members are to report to the Union and not to the jails.
>
> 70. On February 27, 2019 Mr. Husamudeen, without Executive Board approval, changed Mr. Craig's assignments and in response, Mr. Craig asked for an emergency Board meeting on the subject.
>
> 78. On February 28, 2019 Mr. Husamudeen demanded Mr. Craig be sent back to the prisons, subjecting Mr. Craig to the dangerous environment in the jails and away from the Board.
>
> 79. Prior to that, due to his having release time as part of his position with the Executive Board, Mr. Craig spent no time in the jails as he was assigned to the COBA office. (I have seen no evidence that this actions was endorsed by the Board, Craig Declaration)
>
> 100. In retaliation, for Mr. Craig talking about his conduct, including to an outside agency, Mr. Husamudeen turned off Mr. Craig's COBA email, he had all Mr,. Craig's calls forwarded to his office and he threatened that if he wanted his benefits, for him and his family, he would have to get them through his office. (Ultimately it is the City which controls whether Mr. Craig receives his benefits, Craig Declaration).
>
> 101. On March 29, 2019 Mr. Isaac, through a third party, did inform Mr. Craig that his COBA issued cell phone was being tapped, presumably by, or on behalf of Mr. Husamudeen, and he warned him to use his personal cell phone and not the one he was given to do COBA's business.
>
> 134. On May 22, 2019 at a general membership meeting, Mr. Husamudeen admitted that Mr. Craig was sent back to the jail for doing "NOTHING" and that it is his right to send him back as the president because he has control of "release time" and he openly admitted he just did not want Mr. Craig in his office and he reiterated the same things at a September meeting. (Craig Declaration). Exhibit "1"

These and several other actions against Mr. Craig were taken in retaliation for Plaintiff exercising his right to free speech.

**Mr. Husamudeen Acted in Concert with the City Defendants and Therefore Can Be Held Liable in the Instant Matter.**

Defendant argues there must be a close nexus between a non state actor and state actors to involve such an actor in a §1983 claim; Plaintiff agrees. The entire Complaint alleges such a nexus; between Mr. Husamudeen and the City Defendants[1].

> 31. Because he is the president of COBA, Mr. Husamudeen's cooperation with NYC is essential to implement the planned sale of Rikers.
>
> 32. For his part, Mr. Husamudeen has been intentionally looking the other way at NYC's inappropriate policies and in return, NYC has looked the other way at suspicious activities in which Mr. Husamudeen has engaged. (Exh. "1")
>
> 34. Mr. Craig has spoken to outside agencies, including The Bronx District Attorney, the New York State Attorney General, the Board of Charities, the Board of Corrections, various NYC and NYS politicians and the NY Times about Mr. Husamudeen's possibly corrupt activities and NYC's less than savory activities which are matters of grave public concern, and after exercising his right to free and protected speech, Mr. Craig has been retaliated against and harmed **by the Defendants acting both individually and collectively**. (Exhibit "1" The Complaint; emphasis added) See also ¶¶78-80.

The Defendants and their agents have refused to address Mr. Husamudeen's nefarious activities, and looked the other way at his overt acts of retaliation: (Exh. "1"¶¶81-82; Defendant Guccione refusing to take action about Mr. Husamudeen planning to accept, an illegal gift; ¶¶159-160 Defendant Guccione taking no action about a false charge brought by Mr. Husamudeen against Plaintiff;¶¶163-168 Defendant Brann refusing to take action after Defendant Husamudeen threatened to bring a false police report against Plaintiff;¶¶172-177 Warden Caputo refusing to take action against Defendant Hill for acts she took against the Plaintiff).

Instead of looking into Mr. Husamudeen's activities, the Defendants and agents of the

---

[1] By the City Defendants, Plaintiff is referring to the City, NYC Department of Corrections Commissioner Cynthia Brann, Maria Guccione Executive Director Of Labor Relations at the NYC Department of Correction, and Deputy Warden Desiree Hill

Defendants, retaliated against the Plaintiff for complaining and they often did so immediately. (See: Exh. "1"¶¶81-84;¶¶143-146;¶150; ¶151; ¶¶153-157).

Defendant argues that the actions of Mr. Husamudeen were attributable to COBA and as COBA is a private actor it is immune from being held accountable as a state actor under color of law. Defendant errs.

First, Defendant Husamudeen was not acting on behalf of COBA when he retaliated against Mr. Craig. Instead he was acting in his own self interest and without COBA's assistance but with the assistance of the City Defendants. While in his Declaration Mr. Husamudeen alleges as President of COBA he had broad discretion to undertake unilateral actions, such as the retaliatory sanctions he undertook against Mr. Craig, nowhere within the bylaws of COBA is he granted such power. (Craig Declaration, Lichtmacher Declaration). In fact, Defendant Husamudeen has admitted in a Board meeting that no power to send the Executive Board members back to work in the jails appears in writing. (Exh. "3" p. 13 Executive Board Meeting March 20, 2019; Craig Declaration).

We agree with the Defendant that COBA itself should be treated as a private actor and not a state actor. And because Mr. Craig is not suing COBA that is of no consequence.

The most compelling reason that this action against Defendant Husamudeen is properly before this Court is that even if Mr. Husamudeen had acted entirely as a private actor in the instant matter, he still should be held accountable because there is an undeniable nexus between his acts and those of the City Defendants. "For the conduct of a private entity to be "fairly attributable" to the state, there must be such a close nexus between the state and the challenged action that seemingly private behavior may be fairly treated as that of the state itself."

Cranley v Natl. Life Ins. Co., 318 F3d 105, 108 [2d Cir 2003] See also; Flagg v. Yonkers Sav. & Loan Ass'n, 396 F.3d 178, 187 (2d Cir. 2005) (citing Cranley, 318 F.3d at 111)

> A nexus of 'state action' exists between a private entity and the state when 'the state exercises coercive power, is entwined in the management or control of the private actor, or provides the private actor with significant encouragement, either overt or covert, or when the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies. Id. (quoting Cranley, 318 F.3d at

112 (internal citations omitted))

The nexus requirement is meant to "assure that constitutional standards are invoked only when it can be said that the State is responsible for the specific conduct of which the Plaintiff complains." Blum v. Yaretsky, 457 U.S. 991, 1004 (1982)). see also Horvath v. Westport Library Ass'n, 362 F.3d 147, 154 (2d Cir. 2004). Ultimately the City is responsible for virtually all of the actions Mr. Husamudeen took against the Plaintiff as Mr. Husamudeen and the City Defendants are joined in interest in this matter. And the actions taken against Mr. Craig involve matters ultimately controlled by the City Defendants. Further, Plaintiff points out several instances in which he speaks out about the nefarious activities of Defendant Husamudeen, and soon thereafter a City Defendant or agent takes action against him.

Ironically, the DOC has even treated Mr. Husamudeen, as the commanding officer of a Board Member. Commanding officers at DOCS sign off on matters related to firearms-as Mr. Husamudeen was allowed to do. (Craig Declaration; Exh. "4")

**This Action Was Not Brought to Support Mr. Craig's Run for the Presidency of COBA**

Defendant makes the fallacious argument that this action is brought for the improper purpose of aiding Mr. Craig in his bid to be elected President of COBA. Quite the opposite is

true. Mr. Craig's bid for the presidency was necessitated by Defendant Husamudeen's nefarious activities and this Complaint is necessitated by those same activities.

This Motion is frivolous. While the attorneys discussed here are not named Defendants in the Complaint, their actions and inactions are an integral part of what transpired. And all of the listed attorneys, including the author of this Motion, will be called as witnesses in this matter. (Lichtmacher Declaration). This should be particularly alarming to Mr. Charny in light of his prior legal problems involving dishonesty. See; In re Charny, 257 A.D.2d 18 (1st Dep't. 1999) Mr. Charny doubtless cannot afford to again be found to have stepped over the permissible lines drawn for an attorney's conduct.

Defendant alleges it is the Union, COBA, which would have been the proper party, and the claim should have been for denial of fair representation. Neither assertion by Defendant is correct. An action against COBA would be questionable because COBA was not acting in lock step with the City, Mr. Husamudeen was, and Mr. Husamudeen's nefarious activities were performed without the consent of COBA's Board.

**The Duty of Fair Representation is Not the Proper Cause of Action nor is it What Mr. Craig Sought to Pursue in this Forum**

An action for denial of fair representation is inapplicable to this action. This case is not brought to address a failure of a union. Rather, the actions taken against Mr. Craig were taken by Mr. Husamudeen protecting his and the City Defendants' interests to the detriment of numerous people.

> The duty of fair representation is a statutory obligation under the National Labor Relations Act, requiring a union to serve the interests of all members without hostility or discrimination, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct. A union breaches its duty of fair representation if its actions with

respect to a member are arbitrary, discriminatory, or taken in bad faith.

(<u>Figueroa v Foster</u>, 864 F3d 222, 224 [2d Cir 2017])

Plaintiff repeatedly points out Defendant Husamudeen acted without Board approval but with the cooperation of the City Defendants. It would have been frivolous as well as against the Plaintiff's wishes to bring a duty of fair representation action in this matter and Plaintiff has not acted frivolously.

**Defendant's Res Judicata Argument is Entirely Off Point**

None of the cases Defendant cites to support its res judicata argument have decided a fact of consequence to this matter. <u>Jiminian</u>, a case cited by Defendant, is entirely off point. <u>Jiminian v. Seabrook</u>, 760 Fed.Appx.38 (2d Cir. 2019). Plaintiff in this matter does not sue over the corruption alleged in <u>Jiminian</u>, but for retaliation for reporting corruption. And there is no mention of the First Amendment or civil rights violations in <u>Jiminian</u>.

Defendant's reliance on <u>Feliciano</u> is equally misplaced. <u>Feliciano</u> is dissimilar factually and was dismissed on procedural grounds without issues of fact being decided. (Exh. "5" Decision and Order in <u>Feliciano et al v Seabrook et al</u>, 712894/2019 Queens S Ct.)

<u>Valentin vs. Seabrook</u>, is also off point as in that matter the claim was exclusively premised on the internal workings of a union, not on the combined actions of the Defendant and the City Defendants. <u>Valentin vs. Seabrook</u>, et al., Index No. 100135/15 (Defendant's Exhibit "2"). And there is no civil rights violation alleged in <u>Valentin</u>.

**Conclusion**

This Complaint, particularly at this stage, adequately states a prima facie case against Mr. Husamudeen and his Co-Defendants and under these circumstances sanctions for bringing this

action are not appropriate under any of the standards cited. Defendant's Motion must be denied.

Dated: New York, New York
August 2, 2020

_____/s/_____
Fred Lichtmacher