

**THE CITY OF NEW YORK**

**JAMES E. JOHNSON**
*Corporation Counsel*

**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, NY 10007

**Iván A. Méndez, Jr.**
*Assistant Corporation Counsel*
Labor and Employment Law Division
Telephone: (212) 356-2450
E-mail: imendez@law.nyc.gov

February 10, 2021

**By ECF**

Honorable LaShann Dearcy Hall
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:  Craig v. City of New York, et al.,
19 Civ. 11219 (LDH)(PK)
Our No. 2020-021376

Dear Judge Hall:

I am an Assistant Corporation Counsel in the office of James E. Johnson, Corporation Counsel of the City of New York, attorney for the Municipal Defendants[1] in the above-referenced action. I write, in accordance with Rule III.A.1. of this Court's Individual Rules of Practice, to respectfully request a pre-motion conference concerning Municipal Defendants' anticipated motion to dismiss the First Amended Complaint ("FAC").

**Procedural History**

A pre-motion conference concerning the Defendants' anticipated motions to dismiss the original complaint was held on December 17, 2020. Given the various and extensive defects in the Complaint, plaintiff was given an opportunity to amend his complaint, and did so on January 29, 2021. As set forth below, the FAC suffers from the same deficiencies as Plaintiff's prior complaint, and should be dismissed for substantially similar reasons.

**Background and Factual Summary**

Plaintiff is a CO with DOC, and, during the relevant time period, was an member of the executive board of the union thar represents DOC Correction Officers ("COs"), the Correction Officers Benevolent Association ("COBA"). FAC, ¶ 5. The FAC is largely devoted to detailing

---

[1] The Municipal Defendants are the City of New York, the New York City Department of Correction ("DOC") Commissioner Cynthia Brann, Maria Guccione and Desiree Hill.

Plaintiff's acrimonious relationship with former COBA acting president Husamudeen, as well as COBA's attorneys. Given the applicable page restrictions for this letter, Municipal Defendants will focus solely on those allegations that pertain to them.

Plaintiff prefaces the FAC by including extraneous and wholly irrelevant allegations concerning the City's planned sale of Rikers Island. See FAC, ¶¶ 13-19. The point of these allegations appear to be that Plaintiff is now alleging a conspiracy between DOC and COBA to effectuate the sale of Rikers Island. See Id., ¶ 67, under heading "**NYC'S MOTIVATION TO CONSPIRE WITH HUSAMUDEEN"** ("NYC allowed conditions at Rikers to deteriorate so as to gain support for its plan to sell Rikers and use the new smaller facilities."). Plaintiff then claims that on some unspecified date "Plaintiff became aware that Husamudeen was planning to accept a gift from an unapproved vendor…" Complaint, ¶ 40. Plaintiff claims that he inexplicably responded not by immediately reporting this conduct (by Husamudeen in his capacity as union president) to an investigative agency, but by calling DOC's Director of Labor Relations, Defendant Guccione. Id., ¶ 42. Plaintiff claims that following this alleged report to Guccione, Municipal Defendants retaliated against him by: failing to investigate an incident between defendant Hill and Plaintiffs (Id., ¶ 63); "generating at least one false improper disciplinary note"[2] (Id.); (3) "facilitating the rapid transfer of Plaintiff to RNDC" (Id.); "improperly charging Plaintiff for vacation time in furtherance of Husamudeen's efforts to make it difficult or impossible for Plaintiff to attend Board meetings" (Id.); and "sending him into inmate conflicts without proper backup" (Id.). Plaintiff also alleged an issue with his direct deposit that was ultimately resolved in his favor. Id., ¶¶ 75-77.

Thereafter, on November 7, 2019, plaintiff claims that he had a dispute with Deputy Warden Hill stemming from plaintiff's attempt to intervene in an emergency at the jail to which he was assigned by demanding that officers responding to this emergency bring their batons. Id., ¶¶ 85-88. According to plaintiff, Deputy Warden Hill "became irate" and threatened to suspend plaintiff for using his cellphone to contact the "Chief of Department for assistance" in the middle of that emergency. Id., ¶ 86. There is no claim that plaintiff was actually suspended or disciplined in any way following this incident. Plaintiff also claims that he was beaten by an inmate on November 3, 2020, that that "backup was not called for approximately 15 minutes." Id., ¶ 89.

The remainder of plaintiff's allegations center around the DOC's response to the novel coronavirus ("COVID-19") pandemic, and Plaintiff's attempt to second-guess DOC's response. See Complaint, ¶¶ 90-97.

**Analysis of Plaintiff's Claims Against Municipal Defendants**

*First Amendment Retaliation*
To plead a claim of retaliation under the First Amendment, plaintiff must allege that: 1) he engaged in activity protected by the First Amendment; 2) he suffered an adverse employment action; and 3) there is a causal connection between plaintiff's protected speech and the adverse

---

[2] Plaintiff does not specify what a "disciplinary note" is, or what effect, of any it had on his DOC employment, other than having to write a "report." There is no such thing as a "disciplinary note" in DOC's Rules and Regulations.

employment action(s).  See Smith v. Cty. of Suffolk, 776 F.3d. 114, 118 (2d Cir. 2015). Here, plaintiff's claim is fatally deficient because there is no claim that he suffered any materially adverse action, let alone one that was motivated by retaliatory animus. As the Second Circuit has held "[a]n alleged act of retaliation must be 'more than de minimis,' as "'[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise.'" Zelnik v. Fashion Inst. of Tech., 464 F.3d 217, 225 (2d Cir. 2006) (quoting Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982)).

Critically, apart from the purported temporal proximity between his various complaints and the purported (and unfulfilled) threats of discipline, there is no causation to be inferred here. In order for Plaintiff's claims to be deemed plausible, the Court would be required to believe that DOC officials at all levels, from the Commissioner to a jail Captain, conspired to harass plaintiff because of his complaints about COBA's former president and its lawyers. Simply put, plaintiff's claims of a widespread conspiracy between DOC and COBA are heavy on hyperbole, but light on facts, and are entirely implausible.

*Monell*

Plaintiff's Monell claims are similarly deficient because there are no facts pleaded that would suggest a municipal policy, practice or custom lead to the putative harassment of plaintiff. Nor are the handful of allegations mentioning Commissioner Brann sufficient to cast her a municipal policymaker for Monell purposes. Soto v. Schembri, 960 F. Supp. 751, 759 (S.D.N.Y. 1997) (DOC Commissioner not a final policymaker)("The power to make employment decisions alone does not in itself give rise to potential Section 1983 liability."); accord Adams-Flores v. City of N.Y., No. 18 Civ. 12150, 2020 U.S. Dist. LEXIS 37411, at *22 (S.D.N.Y. Mar. 2, 2020) (Commissioner Brann held not to be a municipal policymaker). Thus, plaintiff's purported Monell claims should be dismissed.

*Substantive Due Process*

Plaintiff's Substantive Due Process claim fails for the simple reasons that: (1) "the right to substantive due process does not in and of itself impose any minimum standard of workplace safety for public employees"; and (2) Plaintiff fails to show that the government action at issue was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience. Corr. Officers' Benevolent Ass'n ["COBA"] v. City of N.Y., 415 F. Supp. 3d 464, 469 (S.D.N.Y. 2019). This claim, as the Court already recognized during the December 17, 2020 pre-motion conference, is nothing more than an attempt to second-guess DOC's policies (which were guided by CDC and Department of Health guidelines). This is precisely the sort of interference and second-guessing rejected by Judge Swain in the COBA case, where she held that "courts defer to local officials balancing of competing public policy goals." Id. at 469 (emphasis added).

We thank the Court for its consideration of this submission.

Respectfully submitted,
/s/
Iván A. Méndez, Jr.
Assistant Corporation Counsel



cc:      All Counsel of Record
           (By ECF)