UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALBERT CRAIG,

          Plaintiff,

   v.

THE CITY OF NEW YORK (NYC), ELIAS
HUSAMUDEEN, NYC DEPARTMENT OF
CORRECTIONS COMMISSIONER CYNTHIA
BRANN, MARIA GUCCIONE EXECUTIVE
DIRECTOR OF LABOR RELATIONS AT NYC
DEPARTMENT OF CORRECTIONS, and
DEPUTY WARDEN DESIREE HILL,

          Defendants.

Civil Action No. 20-cv-2152
(LDH)(PK)


MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT HUSAMUDEEN'S MOTION FOR SANCTIONS


Dated: Rhinebeck, New York
      July 15, 2021

Nathaniel K. Charny
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
Tel – (845) 876-7500
Fax – (845) 876-7501
ncharny@charnywheeler.com

Attorneys for Defendant Elias Husamudeen

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... ii

INTRODUCTION ................................................................................1

PROCEDURAL HISTORY....................................................................1

STANDARD OF REVIEW FOR SANCTIONS .........................................2

DISCUSSION ....................................................................................5

I.     Attorney Gopal's Frivolous Allegations of Misconduct ....................5

       A.     Introduction................................................................5

       B.     The Three Alleged False Declarations................................6

       C.     Attorney Gopal's Contended "Suspicious Activities"............9

              1.     The Huberfeld Restitution Deal ............................9

              2.     The Jonah Rechnitz Clawback ............................11

II.    Attorney Gopal's Submissions Warrant Sanctions ........................13

III.   The Appropriate Sanction ......................................................14

CONCLUSION.................................................................................17

i

TABLE OF AUTHORITIES

CASES

Adams v. New York State Dep't of Educ., 855 F. Supp. 2d 205 (S.D.N.Y. 2012) ....................... 5

Adams v. New York State Educ. Dep't,
No. 08-CIV-5996, 2010 WL 4970011 (S.D.N.Y. Dec. 8, 2010)................................................... 5

Bar-Mashiah v Inc. Vil. of Hewlett Bay Park,
18-CIV-4633 (AKT), 2019 WL 4247593 (E.D.N.Y. Sept. 6, 2019).......................................... 5

Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp.,
854 F.2d 1452 (2d Cir. 1988)..................................................................................................... 3

Colucci v. New York Times Co., 533 F. Supp. 1011 (S.D.N.Y. 1982).......................................... 4

Dow Chemical Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329 (2d Cir. 1986).................. 4

Fox v. Vice, 563 U.S. 826, 131 S.Ct. 2205 (2011)........................................................................ 5

Fuerst v. Fuerst, 832 F.Supp.2d 210 (E.D.N.Y. 2011) .................................................................. 3

Hoatson v New York Archdiocese,
05-CIV-10467 (PAC), 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007),
affd, 280 Fed.Appx. 88 (2d Cir. 2008) .............................................................................. 13, 14

Hochstadt v. New York State Educ. Dep't, 547 Fed. App'x 9 (2d Cir. 2013) ............................... 5

Koper, 8-13-74213 (LAS), 2020 WL 5075549 (Bankr. E.D.N.Y. Aug. 25, 2020)..................... 13

Kropelnicki v. Siegel, 290 F.3d 118 (2d Cir. 2002) ...................................................................... 5

Margo v. Weiss, 213 F.3d 55 (2d Cir. 2000) .................................................................................. 3

Meehan v. VIPKid et al., No. 2:20-cv-06370-JS-AKT (E.D.N.Y.)............................................. 16

Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir. 1991) .......................................................... 13

O'Brien v. Alexander, 101 F.3d 1479 (2d Cir. 1996) .................................................................. 13

Oliveri v. Thompson, 803 F.2d 1265 (2d Cir. 1986) ...................................................................... 4

O'Malley v. New York City Transit Auth., 896 F.2d 704 (2d Cir. 1990)....................................... 3

On Time Aviation, Inc. v. Bombardier Capital, Inc., 354 F. App'x 448 (2d Cir.2009).............. 14

Pennie & Edmonds LLP, 323 F.3d 86 (2d Cir. 2003) .................................................................... 3

United States v. Int'l Bhd. of Teamsters,
Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO,
948 F.2d 1338 (2d Cir. 1991) .......................................................................................................... 3

Venegas v. Mitchell, 495 U.S. 82 (1990) ......................................................................................... 4

STATUTES

28 U.S.C. § 1927 ............................................................................................................................... 3

42 U.S.C. § 1983 ............................................................................................................................... 4

42 U.S.C. § 1988 ............................................................................................................................... 4

Fed.R.Civ.P. 11(b) ........................................................................................................................... 3

Fed.R.Civ.P. 11(c)(3) ....................................................................................................................... 3

Rule 11(c) Advisory Comm. Notes (1993) ..................................................................................... 14

<u>INTRODUCTION</u>

On May 19, 2021, Plaintiff by and through his counsel Attorney Lakshmi Gopal requested this Court's intervention to address what Attorney Gopal asserts is not only "unethical misconduct and likely fraud upon the Court" but "criminal" conduct that Attorney Ms. Gopal insists must be referred to law enforcement by this Court.

These submissions are made by Attorney Gopal at ECF 42.

The submissions made by Attorney Gopal at ECF 42, under her signature and supported only by her own declaration, are made entirely of whole cloth and are frivolous by even the most liberal definition under Rule 11.  Notably, as discussed below, these types of defamatory accusations against counsel are Attorney Gopal's modus operandi in Federal Court, and not just in this matter.

Given that the appropriate safe harbor period has passed, that Attorney Gopal has not withdrawn the offending submissions and is sticking by her vacuous and offensive allegations of criminal and unethical conduct, the instant motion follows.

<u>PROCEDURAL HISTORY</u>

This First Amendment retaliation action against Defendant (then-COBA President) Elias Husamudeen was commenced on May 12, 2020 by Plaintiff's then-attorney Fred Lichtmacher.

Defendant Husamudeen sought dismissal because there was no state action alleged as to him.  ECF 15.  At the premotion conference before the Court, as Attorney Gopal concedes, "[t]his Court provided Lichtmacher with clear guidelines on the legal failings of the original complaint in this action -- and granted Plaintiff leave to amend the complaint."  ECF 42, p. 3; <u>see</u> Charny Declaration Ex. 1 (Transcript of 12/17/2020 Court Conference (with Judge DeArcy Hall asking:  "[W]here's the connective tissue here between the conduct by this defendant and the

1

state actors such that the Court would extend 1983 liability to this individual?" (at pages 7-8, 10)).

Rather than correcting the deficiencies, the first amended complaint (the FAC) (ECF 28) highlights the frivolous nature of Plaintiff's claims against Mr. Husamudeen -- as explained in Defendant Husamudeen's premotion letter for leave to move to dismiss the FAC (ECF 32).

In the meantime, Mr. Lichtmacher sought leave to be excused as counsel on two separate occasions based largely on his client's erratic behavior (ECF 24-25, 35, 38), a request finally granted by Magistrate Judge Kuo on March 24, 2021.

On May 8, 2021 Attorney Gopal appeared pro hac vice on behalf of the Plaintiff.  ECF 39.  Eleven days later, on May 19, 2021 Attorney Gopal submitted ECF 42 and its attachments.

On June 1, 2021, Attorney Gopal was served with a notion of motion for sanctions regarding her submissions at ECF 42, along with a cover letter stating in detail the context and legal authority for said motion.  Charny Decl. Ex. 5.[1]

More than 21 days have passed since service of the safe harbor notice.

<u>STANDARD OF REVIEW FOR SANCTIONS</u>

Rule 11(b) of the Federal Rules of Civil Procedure states that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies" that to the best of herknowledge, information, and belief formed after a reasonable inquiry, the filing is:  (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) either

---

[1] Note that Defendant Husamudeen is not seeking sanctions on what was previously noticed as paragraph 1 in the safe harbor notice of motion.

supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."  Fed.R.Civ.P. 11(b).

Sanctions under Rule 11 can be awarded following either a motion on notice or upon a sua sponte determination of the Court.  See Fed.R.Civ.P. 11(c)(3).  When a motion is made on notice, "[t]he standard for triggering the award of fees under Rule 11 is objective unreasonableness," Margo v. Weiss, 213 F.3d 55, 65 (2d Cir. 2000), as opposed to "bad faith," In re Pennie & Edmonds LLP, 323 F.3d 86, 90 (2d Cir. 2003).

In the Second Circuit, an action is "objectively unreasonable" such that "Rule 11 sanctions are appropriate where an attorney or party declines to withdraw a claim 'upon an express request by his or her adversary after learning that [the claim] was groundless.'"  Fuerst v. Fuerst, 832 F.Supp.2d 210, 220 (E.D.N.Y. 2011) (citing authority); see also Calloway v. Marvel Entm't Grp., a Div. of Cadence Indus. Corp., 854 F.2d 1452, 1472 (2d Cir. 1988), O'Malley v. New York City Transit Auth., 896 F.2d 704, 709 (2d Cir. 1990) ("[C]ontinuing to press an obviously meritless lawsuit does tend to indicate bad faith and further supports the imposition of a Rule 11 sanction.")).

Under 28 U.S.C. Section 1927, any attorney in a Federal Court who "so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  As compared to Rule 11, "bad faith" is the touchstone of an award under this statute. United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO, 948 F.2d 1338, 1345 (2d Cir. 1991).

The Second Circuit has held that "an award under § 1927 is proper when the attorney's actions are so completely without merit as to require the conclusion that they must have been

3

undertaken for some improper purpose []." Id. (citation omitted); Oliveri v. Thompson, 803 F.2d 1265 (2d Cir. 1986); Colucci v. New York Times Co., 533 F. Supp. 1011, 1014 (S.D.N.Y. 1982) ("To justify the imposition of excess costs of litigation upon an attorney [under § 1927] his conduct must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation.  The section is directed against attorneys who willfully abuse judicial processes.").

Similarly, under the exercise of the Court's inherent power to supervise and control its own proceedings, the bad-faith exception to the "American Rule" -- that litigants generally bear their own litigation expenses -- allows a court to award attorneys' fees where there is "both 'clear evidence' that the challenged actions 'are entirely without color, and [are taken] for reasons of harassment or delay or for other improper purposes . . .'" Oliveri, 803 F.2d at 1272 (quoting Dow Chemical Pacific Ltd. v. Rascator Maritime S.A., 782 F.2d 329, 344 (2d Cir. 1986)).

The standard a Court uses in determining whether to impose sanctions under its inherent authority is substantively similar to the standard a Court uses in determining whether to impose sanctions under Section 1927.  See Oliveri, 803 F.2d at 1273 ("[W]e hold today that an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent powers.") (citation omitted)).

Finally, under 42 U.S.C. § 1988 a court may, in its discretion, award attorneys' fees to the "prevailing party" in an action brought under 42 U.S.C. § 1983.  "Section 1988 makes the prevailing party eligible for a discretionary award of attorney's fees." Venegas v. Mitchell, 495 U.S. 82, 87 (1990).

4

Section 1988 authorizes a District Court to award attorney's fees to a defendant in a Section 1983 action "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." Fox v. Vice, 563 U.S. 826, 833, 131 S.Ct. 2205, 2213 (2011).

In any case, as here, where a plaintiff's claims are "objectively unreasonable" under Rule 11(b)(2) as "it is patently clear that [the] claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify or reverse the law as it stands[.]' " Adams v. New York State Educ. Dep't, No. 08-CIV-5996, 2010 WL 4970011, at *7 (S.D.N.Y. Dec. 8, 2010), report and recommendation adopted as modified sub nom. Adams v. New York State Dep't of Educ., 855 F. Supp. 2d 205 (S.D.N.Y. 2012), aff'd sub nom. Hochstadt v. New York State Educ. Dep't, 547 Fed. App'x 9 (2d Cir. 2013); Kropelnicki v. Siegel, 290 F.3d 118, 131 (2d Cir. 2002); Bar-Mashiah v Inc. Vil. of Hewlett Bay Park, 18-CIV-4633 (AKT), 2019 WL 4247593, at *12-16 (E.D.N.Y. Sept. 6, 2019) (the attorney should be punished for allowing the frivolous matter to proceed).

Defendant Husamudeen seeks sanctions under all of these provisions in regards to Attorney Gopal's submissions at ECF 42 insofar as such submissions are objectively unreasonable, entirely baseless, frivolous and brought for an improper purpose.

DISCUSSION

I.      Attorney Gopal's Frivolous Allegations of Misconduct[2]

    A.      Introduction

Attorney Gopal's submissions at ECF 42 (for (1) referral to federal authorities for "criminal investigation of the underlying misconduct," (2) referral for "ethical violations alleged

---

[2] Because these frivolous allegations underly Plaintiff's now-fully-briefed motion to disqualify this office as counsel to Defendant Husamudeen, this section of the memorandum is lifted largely (with some further stylistic edits) from Defendant Husamudeen's memorandum in opposition to the motion to disqualify counsel (ECF 48).

herein," and (3) scheduling an "investigation/review and in-person/video-hearing . . ." are frivolous, improper and without any foundation.

Attorney Gopal has fabricated these scandalous allegations completely out of whole cloth.[3]

B.      The Three Alleged False Declarations

At paragraphs 125-157 of her declaration (ECF 42-1), Attorney Gopal asserts that there were three "false declarations made by, through, or in favor of Charny."  Once the hyperbolic titles are put aside, each of these purported "false declarations" is literally <u>nothing</u>.

The three asserted "false declarations" are discussed in turn below.

<u>The "Steier Declaration."</u>  At paragraphs 125-134 of her Declaration, Gopal identifies as the first of these "false declarations" the "Steier Declaration," which was submitted at ECF 18-2. In particular, Attorney Gopal refers to paragraph 18 of Mr. Steier's declaration which states as follows:

> 18.  And Mr. Lichtmacher has done no fact checking before his ad hominem attack regarding a check for $240,000 "received" by COBA from his lawyers, Cooley, LLP. As Mr. Craig is aware, since it was reported to him soon thereafter and is reflected in his own exhibit (Dkt. 16-2), this check was made out by a relative to Mr. Rechnitz. The article referenced by Mr. Craig was leaked by counsel for Mr. Rechnitz -- as Cooley's client was facing sentencing for the Platinum Partners' fraud on COBA. All of this was orchestrated mere days before the sentencing of Mr. Rechnitz.

ECF 42-1 at ¶ 126

Of course, everything that Mr. Steier states in this paragraph is absolutely true.

Attorney Gopal appears to take issue with Mr. Steier's use of the word "reported," when Attorney Gopal claims at paragraph 128 of her declaration as follows:

---

[3] The only declaration submitted was by Attorney Gopal who makes hearsay assertions based on her client's beliefs and suspicions.

> Even if one could feel at ease taking Steier's narration of these
> facts at face value, Plaintiff, nonetheless, finds it rather misleading
> for Steier to characterize his December 18, 2019, email response to
> Plaintiff as a "report" made to Plaintiff "soon thereafter."

ECF 42-1 at ¶ 128.

This proffer, that Attorney Gopal "finds it rather misleading" to characterize the December 18, 2019 email as a "report," is the <u>entirety of the basis of Attorney Gopal's claim that paragraph 18 of the Steier Declaration is a false declaration</u>.

There is so much wrong with Attorney Gopal's assertions regarding paragraph 18 of the Steier Declaration, but two things are immediately evident.  First, Steier did not even call it a "report," instead he said he "reported to [Craig] that this check was made out by a relative to Mr. Rechnitz."  And indeed, that is exactly what Mr. Steier did as is evident from the email at issue which is in the record at ECF 16-2.

Second, even if Mr. Steier did call it a "report" -- which he did not -- Mr. Steier's email is by all measure a report to Mr. Craig addressing Mr. Craig's concerns about the unsolicited $240,000 check received by COBA after hours.  <u>See</u> ECF 16-2.

<u>The "Husamudeen Declaration"</u>.  At paragraphs 135 through 141 of her Declaration, Attorney Gopal asserts that Defendant Husamudeen's Declaration, submitted at ECF 13-1, contains a false statement, as explained by Attorney Gopal at paragraph 136 of her Declaration as follows:

> More alarmingly, the Husamudeen Declaration states under the
> penalty of perjury that Husamudeen has it "under information and
> belief that [Plaintiff's] attorney is under the *misapprehension* that
> merely naming attorney Charny, Isaacs, Steier, and O'Hara in the
> complaint would deprive [Husamudeen] of their counsel.

ECF 14-1 at ¶ 136 (italics added by Attorney Gopal).

The statement referred to is at paragraph 5 of Defendant Husamudeen's Declaration, which in full reads:

> I have it on information and belief that his attorney is under the misapprehension that merely naming attorneys Charny, Isaacs, Steier and O'Hara in the complaint would deprive me of their counsel.

ECF 13-1 at ¶ 5.[4]

Attorney Gopal's basis for contending this is a false statement is remarkable in its frivolity, with Attorney Gopal asserting only:

> Notably, Husamudeen makes the above declarations under the penalty of perjury while having reason to know that Plaintiff's claims were based on his good faith reporting of serious ethical and potentially criminal failings on the part of the Platinum Claw Back Team.

ECF 142-1 at ¶ 141.

In other words, according to Attorney Gopal, Mr. Husamudeen is lying because her client is telling the truth.

"Steier Directing Lichtmacher's Oral Arguments." At paragraphs 142 through 157 of her Declaration, Attorney Gopal makes the remarkable assertion that Mr. Steier speaking during the December 17, 2020 Court Conference before Judge DeArcy Hall is somehow a "false declaration."

However, these paragraphs in Attorney Gopal's declaration are nothing more than Attorney Gopal outlining what occurred during the Court Conference, which is a matter of record and submitted in full as Exhibit 1 to the Charny Declaration.

---

[4] It is more than ironic that Attorney Gopal and her client are now seeking my disqualification as counsel in this matter.

Attorney Gopal appears to be asserting that Mr. Steier was in cahoots with Mr. Craig's then-counsel and was "directing" Mr. Lichtmacher by way of Mr. Steier's statements to the Court. This is a baseless allegation on its face and deeply disrespectful to the Court and its independence.

First, the Court will realize when reading these paragraphs in Attorney Gopal's declaration that really what this is all about is Attorney Gopal's belief that Mr. Craig's former counsel (Fred Lichtmacher) did a terrible job representing Mr. Craig. There is no evidence anywhere for the proposition that Mr. Lichtmacher was in cahoots with my office or Mr. Steier because it is entirely fabricated.[5]

Second, apropos to Attorney Gopal's frivolous assertion that I am implicated in any or all of this, there is literally no mention anywhere of my involvement in any of the three alleged false declarations except to aver that these were "submitted to this Court by and through Attorney Charny." Gopal Decl. ¶ 125.

C.     Attorney Gopal's Contended "Suspicious Activities"

    1.     The Huberfeld Restitution Deal

Attorney Gopal proposes two "suspicious activities" that she then in turn asserts are certainly criminal conduct. As with the "false declarations," these allegations are not just frivolous, they are entirely made-up.

First, Attorney Gopal refers to negotiations and an agreement that occurred between COBA (through counsel at Skadden Arps) and one of the co-conspirators in the Platinum Partners ponzi scheme (Murray Huberfeld) through Huberfeld's criminal defense counsel.

---

[5] It is distinctly possible that the then-pending motion for sanctions against Mr. Lichtmacher and his client (ECF 13) may have given Mr. Lichtmacher some pause, as was the motion's intention.

The original deal, until the very last minute, was for $6 million.  Hence, on January 13, 2019 there was an email and follow up emergency Board meeting at COBA to approve the $6 million deal, as Attorney Gopal accurately reports.  Gopal Decl. ¶ 19.  The deal was approved by voice vote during that telephone call -- which Attorney Gopal calls the "Suspect Telephone Vote."  Gopal Decl. ¶ 21.

COBA's counsel thereafter discovered that there were additional assets available and demanded that Mr. Huberfeld add another million dollars to the deal in order to secure the good faith letter from COBA.  Mr. Huberfeld agreed and the criminal Court was so informed.  Gopal Decl. ¶ 22.

The private restitution deal that was executed provides for a total package of $7 million, with $4 million up front and regular payments thereafter.  This was reported in the press because it was in Court filings made by Skadden Arps (COBA's counsel), as Attorney Gopal accurately reports.  Gopal Decl. ¶ 22.

Attorney Gopal then makes a series of hearsay factual assertions about Mr. Steier and me being admonished about not promptly reporting the increased value of the deal to the Executive Board (Gopal Decl. ¶¶ 23 -26) and without regard to the accuracy of those assertions, Attorney Gopal avers in conclusion (mostly accurately):

> In response, Charny and Steier blamed the urgency around the deal as an excuse for why they did not inform the Executive Board about the difference between the amount reported by the Press and the amount that Charney [sic] and Steier reported [at the January 13, 2019 "suspect vote"].

Gopal Decl. ¶ 27.

Attorney Gopal then contends that all of this was done by  Mr. Steier and me to "cover up a crime."  Gopal Decl. ¶ 36.

This is beyond frivolous and is completely unsupported and unsupportable by anything in the record, anywhere.  This is a sanctionably frivolous submission by Attorney Gopal by any of the available measures.

        2.      <u>The Jonah Rechnitz Clawback</u>

It is difficult to discern what Attorney Gopal is contending occurred regarding the Rechnitz clawback except that Attorney Gopal alleges that it there is some criminal activity somewhere in her muddled factual narrative.  Like everything that precedes it, Attorney Gopal's scandalous assertions are completely baseless and frivolous.

As Mr. Steier reported to Mr. Craig (ECF 16-2) and as COBA reported to U.S. District Court Judge Hellerstein repeatedly both by way of contemporaneous submissions to the Court through Skadden Arps counsel, and through Mr. Husamudeen's victim statement at the Rechnitz sentencing, the facts are as follows.

        (i)      Hoping to curry the same favor as that received by Huberfeld, Rechnitz had delivered to COBA after hours an unsolicited check for $240,000 (with a relative being the payor) along with a cover letter promising additional payments up to $1.2 million.  Charny Decl. Ex. 2 (Rechnitz's criminal counsel submission to Judge Hellerstein), pp. 14-16; Charny Decl. Ex. 3 (Rechnitz sentencing transcript), pp. 37-39.

        (ii)      Rechnitz self-servingly reported the unsolicited payment to the criminal Court (Judge Hellerstein), which in turn made it to the press.  Charny Decl. Ex. 2.

        (iii)      The check was maintained uncashed in a safe within COBA until after the sentencing.  ECF 34-11.

It is on this this very public factual basis that Attorney Gopal attempts to excite the Court with two tidbits she believes prove something is afoot that is not just nefarious, but criminal and unethical.

First, Attorney Gopal contends that because Mr. Steier's December 15, 2019, letter to Judge Hellerstein explaining all of this (partially produced at ECF 34-11) does not appear on Rechnitz's criminal docket at that time, Mr. Steier, Mr. Husamudeen and I are engaging in criminal conduct. Gopal Dec. ¶¶ 100-102.

Perhaps Attorney Gopal wants the Court to believe that the December 2019 submission to Judge Hellerstein never occurred, and it and all of the well-documented events surrounding it are a big lie, covering up some unidentified criminal activity or intent?[6] The Court is left to guess Attorney Gopal's elliptical assertions, but the idea that whatever Attorney Gopal is saying has some traction is frivolous.

Second, Attorney Gopal asserts that because Mr. Husamudeen did not mention the amount of the check during his victim statement at the Rechnitz sentencing, there must be foul play afoot. Gopal Decl. ¶ 107. In this regard, Attorney Gopal makes the following frivolous and absurd statement to the Court:

> There is no basis to assume that Husamudeen is speaking about the one and the same check that Steier mentioned in his correspondence with Plaintiff; nor is there a basis to assume that there was only one check. Notably, Husamudeen does not specify the amount of the check, nor does he discuss how the check was received.

Gopal Decl. ¶ 109.

---

[6] As discussed below, this is not the only proceeding in Federal Court where Attorney Gopal has used this sanctionable litigation strategy.

Is Attorney Gopal really asserting criminal and unethical conduct by all the lawyers involved because in open Federal Court, at a criminal sentencing hearing, Mr. Husamudeen did not elucidate the granular details of the receipt of the check after hours by the Union?

As seen from her submission and its total lack of evidentiary or factual corroboration, whatever it is, it is frivolous.

II.    Attorney Gopal's Submissions Warrant Sanctions

In the Second Circuit, when considering a motion for sanctions, "the standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement."  In re Koper, 8-13-74213 (LAS), 2020 WL 5075549, at *10-12 (Bankr. E.D.N.Y. Aug. 25, 2020) (citing authority).  Indeed, "Rule 11 imposes an affirmative duty on an attorney to conduct a reasonable inquiry as to the law and the facts before presenting and advocating a position to the court," id. (citing authority), and sanctions are appropriate against an attorney if a "factual allegation in a complaint, motion or other paper filed with the court has no evidentiary support . . .," O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996) (citation omitted).

Judge Crotty's decision in Hoatson v New York Archdiocese, 05-CIV-10467 (PAC), 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007), affd, 280 Fed.Appx. 88 (2d Cir. 2008), is on point. In Hoatson, the Court notes that allegations of Civil RICO are "an unusually potent weapon-the litigation equivalent of a thermonuclear device."  Hoatson, 2007 WL 431098 at *9 (citing Miranda v. Ponce Fed. Bank, 948 F.2d 41, 44 (1st Cir. 1991)).

To the extent allegations of criminal and unethical conduct are compared to allegations of Civil RICO violations, the former are significantly more dramatic in their stigmatizing effect and as such sanctions are "particularly important [] because [allegations of criminal and unethical

conduct by counsel] has 'an almost inevitable stigmatizing effect' on those named [individuals]." <u>Id.</u> (citing authority).

Attorney Gopal's submissions on the public docket that Defendant Husamudeen, Mr. Steier and I have engaged in criminal and unethical conduct are the very type of "scurrilous [] inflammatory allegations," <u>Hoatson</u>, 2007 WL 431098 at *12, that not just warrant, but require sanctions in order to deter Attorney Gopal and her client's continued assertion of these frivolous and baseless allegations.

III.    <u>The Appropriate Sanction</u>

In sanctioning counsel, Courts in this Circuit award attorney's fees and costs being mindful that "[t]he purpose of a Rule 11 award 'is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses.'" <u>On Time Aviation, Inc. v. Bombardier Capital, Inc.</u>, 354 F. App'x 448, 452 (2d Cir.2009) (citations omitted).

The Advisory Committee notes to the 1993 Rule 11 amendments provide a list of factors a court may consider in determining whether to impose a sanction or what sanctions would be appropriate:

> Whether the improper conduct was willful or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in either time or expense; whether the responsible person is trained in law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and what amount is needed to deter similar activity by other litigants.

See Rule 11(c) Advisory Comm. Notes (1993).

Here, each of these elements are met in spades.

First, Attorney Gopal's conduct in making these frivolous allegations is willful and is part of repeated conduct. Attorney Gopal's repetition of these defamatory allegations of criminal and unethical conduct in these proceedings – all always relying on her submissions at ECF 42 – have continued both in submissions to the Court and during Court conferences.

Attorney Gopal's recently-filed reply memorandum support of her motion to disqualify is case in point, doubling down on the allegations of criminal and unethical conduct without answering in any way the obvious question of from whence these allegations come, and on what factual basis they are grounded -- instead Attorney Gopal just keeps citing to ECF 42 and stating repeatedly that her submissions therein prove the allegations of criminal and unethical conduct. See ECF 51 (stating, without any substance or explanation, and instead relying exclusively on citation to her submissions at ECF 42, at page 2: "especially given the extent of malfeasance on record before this Court;" at page 4: "Plaintiff plainly described Attorney Charny's personal interests in the outcome of this action;" at page 5: "Given the mounting evidence establishing misconduct by Attorney Charny;" at page 6: "Attorney Charny has long forgotten about his supposed client and has become solely focused on defending himself against Plaintiff's claims that implicate him in financial wrong-doing;" at page 6: "Attorney Charny[ has his] own 'defense strategy' and his representation of Defendant Husamudeen appears to aim solely at evading any allegations of wrong doing being directed against him and against Attorney Steier;" at page 8: "This evidence shows that Attorneys Charny and Steier were not only acting as attorneys in prior representation involving the illicit activities material to Plaintiff's claims but that, further, Attorney Charny abused his position as an attorney to contribute to the malfeasance that Plaintiff reported. Moreover, Plaintiff has put on record evidence that Attorney Charny made falsified records and reports to COBA in events and transactions central to Plaintiff's

15

claims;"[7] at page 9:  "[T]his Court must still address the thick record of unethical conduct that Plaintiff has placed on record.").

Second, such frivolous conduct appears to be Attorney Gopal's standard practice in not just this, but other litigation.  For example, Attorney Gopal publicizes on her website what she contends to be her zealous advocacy on behalf of a client in a proceeding in the Eastern District at Meehan v. VIPKid et al., No. 2:20-cv-06370-JS-AKT (E.D.N.Y.).  In that case, Attorney Gopal goes through similar lengths to defame the defendants' counsel, including the law firm of Epstein, Becker & Green P.C., asserting that the law firm is/was engaging in "an extended cover up" and repeating that Attorney Gopal had proven "serious allegations of cover-up."  Charny Decl. Ex. 6; see also Charny Decl. Ex. 7 (from the same case, Attorney Gopal asserting that Defendants approach their motion to substitute counsel "with unclean hands, as described in the [Gopal] affidavits, exhibits, and the memorandum of law attached . . .").

Just as here, Attorney Gopal is going to these scandalous lengths in the Meehan matter in an effort to deny the defendants their chosen counsel -- all by way of making defamatory accusations against counsel and just as here, by repeatedly relying upon her own "affidavit[]." Once parsed (if the Court wants to wade into this thicket of similarly unspecified and unsupported allegations) the Court will see that the Gopal Affidavit in the Meehan matter stands for nothing even closely resembling "serious allegations" of anything, much less "an extended cover up . . ." by the attorneys at Epstein, Becker & Green.  Charny Decl. Ex. 8.

---

[7] The Court is reminded that Attorney Gopal's relied upon "evidence" of "illicit activities" and "falsified records" is limited to her declaration and other submissions at ECF 42, which as discussed in detail above and no matter how many times Attorney Gopal repeats her summary conclusions otherwise, are completely empty of any substance.

Instead, her scurrilous submissions in both of these matters to multiple Federal Judges reflect what Attorney Gopal believes to be acceptable practice.  This is exactly where the Rules and the Law call for sanctions to deter future similar conduct by counsel such as Attorney Gopal.

Third, although Attorney Gopal appears to be a relatively new attorney practicing law as a solo practitioner without any supervision, see Charny Decl. Ex. 4 (Attorney Gopal's LinkedIn page), Attorney Gopal is nonetheless an attorney and not a pro se party and Attorney Gopal has voluntarily chosen to seek pro hac vice admission before this Court.  It is in this context that Attorney Gopal is now making submissions under her signature alleging criminal and unethical conduct without any basis in fact or law.  As a guest of the Court, Attorney Gopal should be mindful of her obligations to avoid the frivolous allegations made in ECF 42 and yet no such caution is present here or, apparently, in the Eastern District of New York.

It is submitted that the Court should sustain the instant motion for sanctions and order a full reimbursement of all attorneys fees and expenses incurred in dealing with her submissions at ECF 42, and set a briefing schedule regarding such fee shifting.

<u>CONCLUSION</u>

Attorney Gopal's submissions at ECF 42 are frivolous, scandalous, defamatory and completely baseless.  Perhaps Attorney Gopal is channeling her client and Attorney Gopal may argue that her conduct is falling within zealous advocacy as allowed by this Court.  But it is not.  The submissions at ECF 42 are not okay, they are sanctionable.

It is submitted that the instant motion should be granted and that the Court should order briefing on the full lodestar of time and expenses incurred in dealing with the frivolous submissions at ECF 42.

Dated: Rhinebeck, New York
        July 15, 2021

Nathaniel K. Charny
Charny & Wheeler P.C.
9 West Market Street
Rhinebeck, New York  12572
Tel – (845) 876-7500
Fax – (845) 876-7501
ncharny@charnywheeler.com

Attorneys for Defendant Elias Husamudeen