UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
ALBERT CRAIG,                                                 :
                                                              :
                Plaintiff,                                   :
                                                              :
                                                              :     **DECISION AND ORDER**
      -against-                                              :
                                                              :     1:20-CV-02152 (LDH)(PK)
                                                              :
                                                              :
THE CITY OF NEW YORK, ELIAS                                   :
HUSAMUDEEN, NYC DEPARTMENT OF                                 :
CORRECTIONS COMMISSIONER CYNTHIA                              :
BRANN, EXECUTIVE DIRECTOR OF                                  :
LABOR RELATIONS AT NYC                                        :
DEPARTMENT OF CORRECTIONS MARIA                               :
GUCCIONE and DEPUTY WARDEN                                    :
DESIREE HILL,                                                 :
                                                              :
                Defendants.                                  :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

      Albert Craig ("Plaintiff") brought this action against the City of New York, Elias Husamudeen, New York City Department of Corrections Commissioner Cynthia Brann, Executive Director of Labor Relations at New York City Department of Corrections Maria Guccione, and Deputy Warden Desiree Hill (collectively, "Defendants").

      Before the Court on referral from the Honorable LaShann DeArcy Hall is Plaintiff's Motion to Amend the Complaint and Add Parties ("Motion," Dkt. 55), pursuant to Federal Rules of Civil Procedure 15(a) and 21. For the reasons set forth below, the Motion is granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

      Plaintiff is a New York City Department of Corrections Officer, and as of 2013, he was also "a duly elected member of the Executive Board . . . of the Corrections Officers Benevolent Association, (hereinafter COBA)." (*See* First Amended Complaint ("FAC") ¶ 5, Dkt. 28.)

1

On May 12, 2020, Plaintiff, through then-counsel Fred B. Lichtmacher, filed the Complaint, alleging that Defendants deprived Plaintiff of his rights under the First and Fourteenth Amendments of the U.S. Constitution in violation of 42 U.S.C. § 1983. (Compl., Dkt. 1.)

On January 29, 2021, Plaintiff filed the FAC, which asserted four claims under 42 U.S.C. § 1983: (1) a claim of retaliation by the individual defendants in violation of Plaintiff's First Amendment rights (FAC ¶¶ 99-100); (2) a Monell claim against the City of New York, alleging that it violated Plaintiff's free speech rights through its "*de facto* policy of doing whatever is necessary to demonstrate Rikers needs to be closed as it is violent, dangerous and unnecessary" (*id.* ¶ 106); (3) a supervisory liability claim against Defendant Brann for failing to supervise employees who were retaliating against Plaintiff for exercising his First Amendment rights (*id.* ¶ 119); and (4) a substantive due process claim against the City of New York and Brann alleging that they violated Plaintiff's Fourteenth Amendment right to be free from state-created dangers by withholding gloves, masks and soap, and not allowing him to provide his own personal protective equipment, forcing him to be exposed to the COVID-19 virus (*id.* ¶¶ 127-134).

On March 16, 2021, the Court granted Lichtmacher's motion to withdraw as counsel. (*See* Dkt. 35; Order dated Mar. 16, 2021.)

Plaintiff, through new counsel Lakshmi Gopal, requested and was granted leave to file a motion to amend the FAC. (Min. Entry dated June 29, 2021.) On July 29, 2021,[1] Plaintiff filed the Motion, attaching a proposed Second Amended Complaint ("SAC") ("SAC," Dkt. 55-2), a redlined version of the SAC comparing it to the FAC (Dkt. 55-3), and a Memorandum of Law in Support of the Motion ("Pl. Mem. of Law," Dkt. 55-4).

---

[1] The Motion was filed one day after the deadline, but Plaintiff explained that he filed the Motion twenty minutes late due to compatibility issues while uploading the documents. (*See* Dkt. 56.) The Court excuses the late filing and accepts the Motion as timely.

Because Plaintiff also filed a motion to disqualify Husamudeen's counsel, Nathanial K. Charny (Pl. Motion to Disqualify, Dkt. 42), the Court did not require Defendants' response to be filed until a decision on that motion. (Min. Entry dated June 29, 2021.) In addition, on July 15, 2021, Defendant Husamudeen filed a motion for sanctions against Plaintiff and Gopal for statements contained in Plaintiff's motion to disqualify. (Def. Husamudeen Motion for Sanctions, Dkt. 52.)

On June 22, 2022, the Court denied Plaintiff's motion to disqualify Charny and granted in part Defendant Husamudeen's motion for sanctions against Gopal. (Order dated June 22, 2022, Dkt. 59.)

Thereafter, Defendants City of New York, Brann, Guccione, and Hill (hereinafter "Municipal Defendants") filed their opposition to the Motion ("Municipal Response," Dkt. 69), and Defendant Husamudeen filed his opposition. ("Husamudeen Response," Dkt. 70.)

The SAC seeks to add Charny and Marc A. Steier as defendants, add facts, correct errors and inconsistencies in the FAC, restate existing claims, add new claims, and change the relief requested. (*See* Pl. Mem. of Law at 3-4.) It identifies three "causes of action," broken down into nine "counts." Counts I through IV allege violations of 42 U.S.C. § 1983 in that (1) the City, Brann, and Guccione constructively deprived Plaintiff of his "assignment, on a full-time basis, to time spent on union activities . . . ('full-time release')" and of his position as the COBA Annuity Fund Trustee, without due process in violation of the Fourteenth Amendment (SAC ¶¶ 341-42); (2) all defendants retaliated against Plaintiff for "engag[ing] in protected speech as a union leader and citizen speaking on matters of public concern," in violation of his First Amendment "rights to free speech and to expressive association" (*id.* ¶¶ 345-48); (3) all defendants, except Hill, violated Plaintiff's right under the First Amendment to free association by "block[ing] Plaintiff from conducting, continuing, and growing his associative activities, including with a budding minority group within COBA that Plaintiff was gathering against a long-dominant corrupt group within COBA" (*id.* ¶ 351); and (4) the City deprived Plaintiff of his liberty interest in having effective channels to report corruption, to participate in public

3

life, to perform contracts, and to participate in private elections without interference (*id.* ¶ 354). Counts V and VI allege tortious interference in that (1) Husamudeen, Steier, Charny, and Guccione "intentionally procured bre[a]ch of" Plaintiff's contract with COBA to serve as a COBA Annuity Fund Trustee (*id.* ¶¶ 358-60); and (2) Steier and Charny interfered with Plaintiff's "valid and binding contract for legal services" with Lichtmacher. (*Id.* ¶ 363.) Count VII alleges that Husamudeen, Steier, and Charny "prevented COBA's compliance with" New York Not-for-Profit Corporation Law ("NPCL") § 715-b, in retaliation for Plaintiff's "whistleblowing and his efforts to seek compliance with NPCL § 715-b." (*Id.* ¶ 374.) Count VIII alleges that Husamudeen, Steier and Charny breached their duty of care to Plaintiff under NPCL § 715 "through individual action beyond the scope of employment," thus committing the tort of negligence per se. (*Id.* ¶¶ 378-80.) Count IX alleges that, "[a]s an attorney retained by the COBA Annuity Fund, Defendant Charny owed a fiduciary duty to Plaintiff, a Trustee of the COBA Annuity Fund," and that he breached that duty. (*Id.* ¶¶ 382-83.)

Plaintiff argues that the amendments are necessary to ensure that the SAC reflects the case that Plaintiff originally intended to bring, and would have brought, but for the actions of his prior counsel Lichtmacher. (Pl. Mem. of Law at 4.)

## DISCUSSION

### I. Legal Standard for Motion to Amend Complaint

Requests to amend the complaint are generally governed by Rule 15 of the Federal Rules of Civil Procedure, which provides that once the period to amend as a matter of course has passed, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Rule 15 states that "[t]he court should freely give leave when justice so requires." *Id.*; *see Pinyuk v. CBE Grp., Inc.*, No. 17-CV-5753 (RRM)(CLP), 2019 WL 1900985, at *2 (E.D.N.Y. Apr. 29, 2019) ("Rule 15 expresses a strong presumption in favor of allowing amendment . . . ."). Leave to amend may be denied only "for good reason, including futility, bad faith,

4

undue delay, or undue prejudice to the opposing party." *Id.* at \*2 (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200-01 (2d Cir. 2007)). The opposing party bears the burden of showing good reason to deny amendment. *See Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993). The determination of whether to grant or deny leave to amend "is within the sound discretion of the district court." *McCarthy*, 482 F.3d at 200.

A motion to amend may be denied if the proposed amendment is futile. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 339 (2d Cir. 2000). A complaint is not futile when it is "sufficient to withstand a motion to dismiss under Rule 12(b)(6) . . . ." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *see also IBEW Loc. Union No. 58 v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015) ("[T]he standard for denying leave to amend based on futility is the same as the standard for granting a motion to dismiss."). The Court must accept all allegations in the proposed amended complaint as true and draw all inferences in Plaintiff's favor to determine whether it states a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint's factual allegations, when accepted as true, must "state[] a claim that is 'plausible on its face.'" *Kiarie v. Dumbstruck, Inc.*, 473 F. Supp. 3d 350, 354 (S.D.N.Y. 2020) (quoting *Iqbal*, 556 U.S. at 678 (citation omitted)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

Federal Rule of Civil Procedure 21 governs requests to add or dismiss parties or to add or sever claims against a party. Fed. R. Civ. P. 21. "The same standards that are used when considering motions to amend under Rule 15 have been applied to motions under Rule 21." *Brown v. Whitley*, No. 21-CV-2933 (AMD)(CLP), 2022 WL 1504757, at \*2 (E.D.N.Y. Apr. 22, 2022); *see Kiarie*, 473 F. Supp. 3d at 353 (noting the showing necessary to add or remove a party under Rule 21 "is the same as that

required under Rule 15(a)" (citation omitted)).

## II. Municipal Defendants' Opposition

Municipal Defendants argue, in a response that is just over a single page long, that permitting Plaintiff to amend the FAC would be futile in that the proposed amendments are "borderline frivolous" and the SAC "suffers from many of the same deficiencies (as well as from some other new ones)" as the FAC. (Municipal Response at 1.) They state that Plaintiff has failed "to adequately plead Monell liability against the City or any of the individually-named defendants . . . , to articulate any causal connection whatsoever between his purported protected speech, and any of the actions of which he complains[,]" to "articulate any actionable adverse actions taken by Municipal Defendants because of his protected speech," and "to articulate an actionable Due Process Claim—substantive or procedural." (*Id.* at 1-2.)

Municipal Defendants do not identify the portions of the SAC that they contend should not be permitted as amendments to the FAC. Indeed, their arguments focus on claims that are already contained in the FAC rather than on claims and factual allegations that are new in the SAC. In addition, they make conclusory statements that Plaintiff has insufficiently pleaded various claims but provide scant legal support for their arguments, citing to only one case in their response and failing to provide a memorandum of law that "set[s] forth the cases and other authorities relied upon in support of the motion," along with "[s]upporting affidavits and exhibits thereto containing any factual information and portions of the record necessary for the decision of the motion." Loc. Civ. R. 7.1(a)(2) and (3). Thus, Municipal Defendants fail to address Plaintiff's motion to *amend* the FAC, instead making cursory arguments about the currently operative FAC, which are more appropriately raised in a motion to dismiss.

Accordingly, the Court declines to deny Plaintiff leave to amend based on Municipal Defendants' unsupported assertions that the SAC is futile. *See, e.g.*, *Wilson v. N.Y. City Police Dep't*, No.

6

09-CV-2632 (PAC)(HBP), 2011 WL 1215031, at *12 (S.D.N.Y. Feb. 4, 2011) (denying motion to dismiss as to certain claims where "defendants' arguments make no effort to identify the elements of plaintiff's remaining claims, no effort to discuss the allegations set forth in the Amended Complaint and . . . offer virtually nothing more than conclusory statements that plaintiff has not alleged a claim for retaliation and has not alleged a hostile environment claim"), *R&R adopted*, 2011 WL 1215735 (S.D.N.Y. Mar. 25, 2011).

### III.  Futility of Plaintiff's Proposed Amendments Adding Charny and Steier

Defendant Husamudeen opposes the Motion only on the ground that the addition of Charny and Steier as defendants is futile.[2] (Husamudeen Response at 1 n.1.) Therefore, the Court limits its analysis to the proposed amendments in the SAC that seek to add Charny and Steier as defendants.

Plaintiff seeks to assert six claims against Charny and Steier, and a seventh claim against Charny. The SAC names Charny and Steier as defendants in two of its claims under 42 U.S.C. § 1983, alleging that they violated Plaintiff's First Amendment right to free speech by retaliating against him for engaging in protected speech (Count II) and his First Amendment right to free association by interfering with his union activities (Count III). They are included as defendants in the two claims of tortious interference, with regard to Plaintiff's contract with COBA (Count V) and his contract with Lichtmacher (Count VI), and the two claims under NPCL, for preventing COBA's compliance with NPCL § 715-b in retaliation for Plaintiff's whistleblowing (Count VII), and breaching their duty of care under NPCL § 715, sounding in negligence per se (Count VIII). Finally, the SAC alleges that Charny breached a fiduciary duty to Plaintiff, who was a Trustee of the COBA Annuity Fund (Count IX).

---

[2] Husamudeen states that he intends to file a motion to dismiss that will address all other claims. (Husamudeen Response at 1 n.1.)

### A. *42 U.S.C. § 1983 (Counts II and III)*

Counts II and III of the SAC allege that Defendants, including Charny and Steier, violated 42 U.S.C. § 1983, in that they, acting under color of law, "retaliated against Plaintiff for his protected speech" "as a union leader and citizen speaking on matters of public concern" (SAC ¶¶ 345-46), and burdened his freedom of association in relation to COBA. (*Id.* ¶¶ 351-52.)

1. Legal Standard under Section 1983

Section 1983 prohibits a person, "under color of any statute . . . of any State . . ." from depriving an individual of his or her "rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. "Section 1983 itself does not provide substantive rights but rather offers a means of vindicating federal rights conferred elsewhere." *AK Tournament Play, Inc. v. Town of Wallkill*, No. 09-CV-10579 (LAP), 2011 WL 197216, at *2 (S.D.N.Y. Jan. 19, 2011), *aff'd*, 444 F. App'x 475 (2d Cir. 2011).

"In order to state a claim under § 1983, a plaintiff must allege that he was injured by either a state actor or a private party acting under color of state law." *Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002). "[A] private individual may be subject to § 1983 liability if that individual willfully collaborated with an official state actor in the deprivation of a federal right." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (quoting *Bacquie v. City of N.Y.*, No. 99-CV-10951 (JSM), 2000 WL 1051904, at *1 (S.D.N.Y. July 31, 2000) (citation omitted)). "To state a claim against a private entity on a section 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Ciambriello*, 292 F.3d at 324 (quoting *Spear v. Town of W. Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)).

To establish a conspiracy, a plaintiff "must show: '(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages.'" *Rivers v. N.Y. City Hous. Auth.*, 176 F. Supp. 3d 229, 247

8

(E.D.N.Y. 2016) (quoting *Ciambriello*, 292 F.3d at 324-25), *aff'd sub nom. Crenshaw v. N.Y. City Hous. Auth.*, 697 F. App'x 726 (2d Cir. 2017); *see Szymonik v. Connecticut*, 807 F. App'x 97, 102 (2d Cir. 2020) (citation to summary order). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello*, 292 F.3d at 324; *see, e.g., Spear*, 954 F.2d at 68. Courts should dismiss "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights . . . ." *Ciambriello*, 292 F.3d at 325 (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993) (citation omitted)).

    2. <u>Whether Charny and Steier Acted Under Color of Law</u>

Plaintiff concedes that Charny and Steier are not state actors. (*See* Pl. Mem. of Law at 7 (referring to them as "two private actors").) He argues, however, that he has "advanced particularized allegations of conspiracy" between them and state actors to support his allegations of a "42 U.S.C. § 1983 conspiracy" to end his union activities. (*Id.* at 8.)

The SAC alleges generally that "[s]ince at least November 2018, Defendants Steier and Charny (and any defendants who are private actors) have acted as willful participants in joint and on-going action with defendants who are state agents to deprive Plaintiff of his constitutional rights with a common aim of ending Plaintiff's union career." (SAC ¶ 15.) It describes joint actions allegedly undertaken by Charny, Steier, and other defendants to advance that aim, consisting of revocation of Plaintiff's full-time release (*id.* ¶ 136), "undermin[ing] Plaintiff's Election campaign" (*id.* ¶ 300), and interfering with his ability to obtain independent counsel. (*Id.* ¶¶ 234-35.) It also alleges that they acted under color of law to deprive Plaintiff of his right to associate with other COBA members. (*Id.* ¶¶ 351-52.)

The conclusory allegations of joint activity are insufficient to establish that Charny or Steier acted in concert with a state actor. *See, e.g., Szymonik*, 807 F. App'x at 102 (finding plaintiff's "vague

9

speculation" that defendant's actions "may rise to the level of conspiracy" failed to state a § 1983 conspiracy claim); *Guttilla v. City of N.Y.*, No. 14-CV-156 (JPO), 2015 WL 437405, at *6 (S.D.N.Y. Feb. 3, 2015) (dismissing § 1983 claim against defendants where "the complaint makes only conclusory allegations that these defendants conspired with a state actor").

With regard to revocation of Plaintiff's full-time release, the SAC makes no mention of Charny's involvement. The only allegation specific to Steier is that "[o]n information and belief, Defendant Steier was responsible for the legal theory that Defendants Husamudeen and Guccione used to justify revocation of Plaintiff's full-time union release." (SAC ¶ 131.) Plaintiff's allegation regarding Steier is purely speculative and not indicative of an agreement with other defendants to deprive Plaintiff of his release time.³

The allegations that Steier and Charny acted in concert with state actors to interfere in Plaintiff's election campaign are likewise speculative. The SAC states that "[t]o complete their efforts to end Plaintiff's union career, acting individually independently and/or in concert, Defendants took a variety of steps to undermine Plaintiff's Election campaign, including while acting under color of law and through third-party interference in Plaintiff's contracts." (*Id.* ¶ 300.) Although Plaintiff does not state what he was campaigning for, it appears to be a position within COBA. Plaintiff alleges "[o]n information and belief, Supplemental [election] Rules were drafted by/on the advice of willing participant Defendant Steier" and instituted by Husamudeen, granting "unlawful control over every aspect of the Election to a committee that he assembled." (*Id.* ¶¶ 302-03.) The SAC alleges that "[a]s a willful participant in joint activity, Defendant Charny organized interference in the Election by planning and organizing the wrongful appointment of Arthur Schwartz as Election Counsel." (*Id.* ¶

---

³ The SAC states individuals other than Charny or Steier, *i.e.* Husamudeen, Guccione "and possibly Brann," were responsible for revoking Plaintiff's full-time union release. (SAC ¶ 129.) It also states that "[a]fter unlawfully triggering revocation of Plaintiff's full-time release, in retaliation against Plaintiff's protected speech, Defendant Husamudeen refused any union release time, whatsoever, for Plaintiff." (*Id.* ¶ 171.)

305.) Such actions do not plausibly suggest that Charny and Steier conspired with any state actors to interfere with Plaintiff's constitutional rights.

The SAC also fails to plausibly allege that Charny and Steier conspired with state actors to interfere with his ability to obtain independent counsel. Plaintiff alleges that "Husamudeen, Steier, and Charny misused access to Plaintiff's [email] [a]ccounts, including to prevent Plaintiff from acquiring independent legal services." (*Id.* ¶ 244.) These allegations are purely speculative and fail to allege that Charny and Steier took any actions, let alone that they acted in concert with any state actor.

Plaintiff states that he provided Steier with his tablet and Gmail password in July 2015 and did not think to change his password for over a year. (*Id.* ¶¶ 229, 232.) As a result, the SAC alleges, "[t]here is reason to believe that Defendants Husamudeen, Steier, and possibly Charny misused these privileges to monitor Plaintiff's COBA Accounts and his personal accounts []." (*Id.* ¶ 234.) In support of this allegation, Plaintiff states that his "COBA email address was deactivated" (*id.* ¶ 236), and that after the webmaster restored it, "it would be strategically tampered with, repeatedly and intermittently throughout his term as a union officer, including by deleting and blocking emails." (*Id.* ¶ 239.) Not only are Plaintiff's allegations of involvement by Charny, Steier and other defendants based on mere suspicion, but the SAC provides further information that contradicts those suspicions. It states that "[a]round March 2019, Recording Secretary Danny Palmieri admitted by text messages to Plaintiff that he had deliberately blocked Plaintiff's COBA email account pending investigation of Plaintiff's charges against Defendant Husamudeen . . . ." (*Id.* ¶ 240.) Palmieri is not alleged to be a state actor or part of the conspiracy. Furthermore, while Plaintiff "experienced a strange pattern while seeking out legal representation" since February 2019 in that, attorneys were at first interested in taking his case, but then inexplicably changed their minds (*id.* ¶¶ 245-47), the SAC does not plausibly allege that Charny or Steier conspired with any state actor to interfere with Plaintiff's rights.

Finally, the SAC does not allege any facts to suggest that Charny or Steier acted in concert

11

with a state actor to deprive Plaintiff of his right to associate with other COBA members. This claim is based on Plaintiff's argument that denial of his full-time release "prevented him from being at the union building full-time and during most regular business hours" (*id.* ¶ 158), and that he "was kept away from Board Meetings and stripped of any assignments that put him in contact with officers, membership, management, and union supporters." (*Id.* ¶ 157.) As discussed above, the SAC fails to plausibly allege that Charny and Steier conspired with a state actor to revoke Plaintiff's full-time release. Similarly, there are no allegations that Charny or Steier conspired with any state actor regarding Plaintiff's assignments and ability to contact union members or supporters.

Plaintiff does not identify any communications, acts, or omissions that suggest that Charny or Steier were colluding with any state actor to deprive Plaintiff of his constitutional right. Even if Charny or Steier may have engaged in conduct that violated Plaintiff's constitutional rights, such actions are "not evidence that there was an agreement and meeting of the minds to deprive plaintiff of his constitutional rights." *Middleton v. City of N.Y.*, No. 04-CV-1304 (JFB)(LB), 2006 WL 1720400, at *7 (E.D.N.Y. June 19, 2006) (citation omitted)). Plaintiff's suspicions of a conspiracy between Charny, Steier and any state actor are pure conjecture and do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Thus, Plaintiff's allegations cannot support an inference that there was a meeting of the minds between either Charny or Steier and any state actor to interfere with Plaintiff's First Amendment rights. *See, e.g.*, *AK Tournament*, 2011 WL 197216, at *4; *Dimps v. Dist. Council 37*, No. 01-CV-1735 (DC), 2002 WL 206992, at *3 (S.D.N.Y. Feb. 8, 2002) (dismissing § 1983 claim against union defendant because the plaintiff failed to "allege that [the union] defendant conspired with a state official").

Because the SAC does not sufficiently allege that Charny and Steier acted under color of law, it is unnecessary to determine whether Plaintiff has sufficiently alleged interference with his First

12

Amendment rights.

Accordingly, Plaintiff's request to add Section 1983 claims against Charny and Steier is denied as such amendments would be futile.[4]

### B. *Tortious Interference (Counts V and VI)*

1. Tortious Interference Legal Standard

"Under New York law, the elements of a tortious interference [of contract] claim are: (a) that a valid contract exists; (b) that a 'third party' had knowledge of the contract; (c) that the third party intentionally and improperly procured the breach of the contract; and (d) that the breach resulted in damage to the plaintiff." *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir. 1996).

"[C]onclusory allegations of interference with an unspecified contract are insufficient to plead tortious interference." *Lesesne v. Brimecome*, 918 F. Supp. 2d 221, 227 (S.D.N.Y. 2013); *see, e.g.*, *Gaughan v. Rubenstein*, 261 F. Supp. 3d 390 (S.D.N.Y. 2017). "It is not enough to describe the contract in general terms . . . ; '[i]t is imperative that, in bringing a tortious interference claim, a plaintiff identify "the relevant terms of the contract[] that existed" that were breached by defendant.'" *Corning Inc. v. Shenzhen Xinhao Photoelectric Tech. Co.*, 546 F. Supp. 3d 204, 211 (W.D.N.Y. 2021) (quoting *Alvarado v. Mount Pleasant Cottage Sch. Dist.*, 404 F. Supp. 3d 763, 791 (S.D.N.Y. 2019) (citations omitted)); *see also Leadsinger, Inc. v. Cole*, No. 05-CV-5606 (HBP), 2006 WL 2320544, at *11–12 (S.D.N.Y. Aug. 10, 2006); *Pitcock v. Kasowitz, Benson, Torres & Friedman, L.L.P.*, 80 A.D.3d 453, 454 (N.Y. App. Div. 1st Dept.

---

[4] Various other misconduct alleged by Plaintiff involving "coordinated harassment of Plaintiff while he was working in his capacity as a DOC corrections officer," is not alleged to involve Charny or Steier in any way. (*See* Pl. Mem. of Law at 7.) Additionally, the SAC alleges that as a result of Plaintiff reporting misconduct, including by Charny and Steier (*see* SAC ¶¶ 88, 96, 104-05), "[f]raud and retaliation against Plaintiff for his inquires remained on-going . . . ." (*Id.* ¶ 107.) However, the SAC fails to allege any actions by Charny or Steier taken in retaliation or as part of any conspiracy with a state actor. Finally, the SAC states that in response to Plaintiff emailing the Board and the Platinum Clawback Team to ask why Charny and Steier did not report receipt of the Rechnitz payment to the Board (*id.* ¶ 148), Steier sent Plaintiff a threatening email. (*Id.* ¶ 152.) This allegation is insufficient to plausibly state that Steier acted in concert with a state actor to violate Plaintiff's constitutional right. In any event, the statements that Plaintiff attributes to Steier cannot reasonably be interpreted as a threat.

2011).

A plaintiff must also "'provide specific allegations' of the defendant's knowledge and cannot survive a motion to dismiss by making merely a 'conclusory assertion' of knowledge." *Medtech Prod. Inc. v. Ranir, L.L.C.*, 596 F. Supp. 2d 778, 813 (S.D.N.Y. 2008) (quoting *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354, 359 (S.D.N.Y. 2001)). While a defendant need not be aware of all of the terms of the contract, "the plaintiff must plead specific allegations of the defendant's knowledge . . . , including some knowledge of the terms and conditions of the allegedly interfered-with contract." *Corning Inc.*, 546 F. Supp. 3d at 212 (quoting *Taboola, Inc. v. Ezoic Inc.*, 17-CV-9909, 2020 WL 1900496, at *10 (S.D.N.Y. Apr. 17, 2020) (citations omitted)).

With respect to the third element, examples of conduct sufficient to qualify as intentional and improper include "physical violence, fraud, or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure." *Medtech*, 596 F. Supp. 2d at 813 (quoting *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 191 (N.Y. 1980)). "[P]ersuasion alone," however, "even if such persuasion is 'knowingly directed at interference with the contract[]'" is insufficient. *Id.* (quoting *Guard–Life*, 50 N.Y.2d at 191).

    2.    <u>Analysis of Plaintiff's Tortious Interference Allegations</u>

        a.    *<u>Plaintiff's Contract with COBA</u>*

Count V alleges that Defendants Husamudeen, Guccione, Charny, and Steier, intentionally procured a breach of Plaintiff's "valid and binding contract for his services as a COBA Annuity Fund Trustee" without justification and caused damages. (SAC ¶¶ 358-61.) The SAC alleges that "[b]y revoking Plaintiff's full-time release, interfering in his part-time release, and preventing him from attending relevant events and accessing relevant information, relevant defendants caused . . . breach of Plaintiff's contract as a COBA Annuity Fund Trustee." (*Id.* ¶ 180.)

The SAC fails to describe any relevant terms of the purported contract, when it was in effect, who the parties to the contract were, and what provisions were breached. *See Berman v. Sugo L.L.C.*, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) (dismissing tortious interference counterclaims where counterclaim alleged the existence of a contractual relationship "but sets forth no facts to allege what kind of contract [the defendant] had with [the third party], whether it was nonexclusive, and whether it was valid").

Without such information, the SAC does not sufficiently allege that a contract existed, let alone that it was breached.[5] Furthermore, the SAC does not contain allegations of any action by Charny or Steier to "intentionally and improperly" procure breach of such a contract. *Finley*, 79 F.3d at 1294.

      b. *Plaintiff's Contract with Lichtmacher*

Count VI alleges that Charny and Steier procured a breach of Plaintiff's "valid and binding contract for legal services with [] Lichtmacher" without justification, resulting in damages. (SAC ¶¶ 363-66.)

Plaintiff alleges that several of Lichtmacher's actions—being at first responsive to Plaintiff, but then changing his attitude (*id.* ¶ 271), delaying filing Plaintiff's case (*id.* ¶ 272), advancing COVID-related theories that Plaintiff did not agree with (*id.* ¶¶ 277-79), failing to add Steier and Charny as defendants, and failing to file a motion to disqualify Charny, despite Plaintiff's requests that he do so (*id.* ¶¶ 283-84)—were "because of interference by Defendants Steier and Charny." (*Id.* ¶ 285.)

---

[5] The SAC contains information that appears to contradict the existence of a contract for Plaintiff's services as COBA Annuity Fund Trustee. Plaintiff states that he was "popularly elected to the [COBA] Board as an Executive Officer, as COBA's First City-Wide Trustee" around 2016 (SAC ¶ 25), and that he was "appointed along with other Board Members to serve as a COBA Annuity Fund Trustee; his appointment was ratified by a majority of the Board." (*Id.* ¶ 86.) These statements suggest that Plaintiff's position as a COBA Annuity Fund Trustee was not a matter of contractual right such that Plaintiff's "constructively discharge from his position as First City-Wide Trustee/Annuity Fund Trustee" would constitute a breach of contract. (*Id.* ¶ 335, *see id.* ¶ 180.)

However, the SAC does not describe any of the terms of a contract between Plaintiff and Lichtmacher or which provisions were breached through Lichtmacher's actions or inactions. It fails to allege that Charny or Steier had knowledge of any of the contract's provisions. It also fails to allege that Charny or Steier intentionally and improperly procured the breach of the purported contract.

The SAC alleges that (1) Charny and Steier used Plaintiff's email account to interfere with Plaintiff's relationship with Lichtmacher, and (2) Steier interfered with Lichtmacher's arguments and pleadings. As discussed above, the allegations of misuse of Plaintiff's email account by Charny and Steier are purely speculative. The allegation that Steier "explicitly interfered in [] Lichtmacher's pleadings, seeking to direct and guide them" by interrupting Lichtmacher during a telephone conference on December 17, 2020 (*id.* ¶ 288) is similarly conjectural.[6] *See, e.g., Gaughan*, 261 F. Supp. 3d at 428 (finding plaintiff's "vague allegations appear to be little more than mere suspicions that are inadequate to support a claim for tortious interference").

Accordingly, Plaintiff's tortious interference claims against Charny and Steier are futile and Plaintiff's request to add them is denied.

## C. *Not-for-Profit Corporation Law (Counts VII and VIII)*

Count VII of the SAC alleges that Charny and Steier retaliated against Plaintiff for whistleblowing in violation of NPCL § 715-b. Count VIII alleges that they negligently breached a duty of care owed to Plaintiff under NPCL § 715.

1. NPCL Legal Standard

NPCL § 715-b(a) provides, *inter alia*, that certain not-for-profit corporations "shall adopt, and oversee the implementation of, and compliance with, a whistleblower policy to protect from retaliation

---

[6] The SAC also states that "[t]his Court may take judicial notice that Defendant Steier even issued a threat to Plaintiff's present counsel during a June 28, 2021, telephone conference stating Plaintiff's Counsel was entering treacherous waters by following Plaintiff's instructions to request investigation." (SAC ¶ 250.) The Court declines to take judicial notice of this statement and finds in any event that it does not give rise to the inference that Steier threatened Plaintiff's counsel.

persons who report suspected improper conduct." NPCL § 715-b(a); *see Joshi v. Trustees of Columbia Univ. in N.Y.*, No. 21-418, 2022 WL 3205883, at *2 (2d Cir. Aug. 9, 2022).

New York courts are divided on whether Section 715-b(a) provides for a private right of action. *Id.* at *2; *see Joshi v. Trustees of Columbia Univ. in N.Y.*, 515 F. Supp. 3d 200, 224 (S.D.N.Y. 2021). In *Joshi*, 515 F. Supp. 3d 200, the District Court recognized the divide, but found arguments in favor of the existence of a private right of action more persuasive. *Id.* at 224. The district court held, however, that plaintiff had not presented evidence that Columbia failed to comply with Section 715-b. *See id.* at 224. The Second Circuit affirmed, noting that "even if section 715-b(a) provides for a private right of action . . . Columbia complied with the statute by implementing the relevant policies to protect whistleblowers and . . . adhered to those policies." *Joshi*, 2022 WL 3205883, at *2.

With regard to Count VIII, Plaintiff does not specify the subsection of NPCL § 715 that he alleges was violated. NPCL § 715 sets forth various requirements and restrictions regarding related party transactions. Subsection (a) provides, *inter alia*, that "[a]ny director, officer or key person who has an interest in a related party transaction shall disclose in good faith to the board . . . the material facts concerning such interest." NPCL § 715(b) lists requirements that a charitable corporation must comply with before entering into a related party transaction, and subsection (c) provides, *inter alia*, that corporations may adopt additional restrictions related to such transactions. NPCL § 715(c). Subsections (d) and (e) relate to the compensation of directors and officers. NPCL § 715(d), (e). Subsection (f) provides that "[t]he attorney general may bring an action to enjoin, void or rescind any related party transaction or proposed related party transaction that violates any provision of this chapter . . . " NPCL § 715(f). Subsections (g) and (j) further relate to the attorney general's authority. *See* NPCL § 715(g), (j). Subsection (h) states, *inter alia*, that a related party may not "participate in deliberations or voting relating to a related party transaction in which he or she has an interest . . . ." NPCL § 715(h). And subsection (i) provides that "[i]n an action by any person or entity other than

17

the attorney general, it shall be a defense to a claim of violation of any provisions of this section that a transaction was fair, reasonable and in the corporation's best interest at the time the corporation approved the transaction." NPCL § 715(i).

2. Analysis of Plaintiff's NPCL Allegations

The SAC alleges that "Defendants deliberately, openly, and explicitly prevented COBA's compliance with NPCL § 715-b, acting in retaliation against Plaintiff whistleblowing and his efforts to seek compliance with NPCL § 715-b." (SAC ¶ 374.)

Assuming that a private cause of action exists under Section 715-b, Plaintiff fails to allege sufficient facts to make out a claim.

The SAC does not allege whether COBA had a whistleblower policy. Regardless, Section 715-b places responsibility on the non-profit's board to adopt and oversee compliance with its whistleblower policy. *See Joshi*, 515 F. Supp. 3d 200 at 224. Plaintiff states that Steier and Charny are "key persons" under NPCL, which if true, could arguably make them responsible for adopting and enforcing COBA's whistleblower policy. Under NPCL § 102(a)(25), a "key person," is:

> any person, other than a director or officer . . . who (i) has responsibilities, or exercises powers or influence over the corporation as a whole similar to the responsibilities, powers, or influence of directors and officers; (ii) manages the corporation, or a segment of the corporation that represents a substantial portion of the activities, assets, income or expenses of the corporation; or (iii) alone or with others controls or determines a substantial portion of the corporation's capital expenditures or operating budget.

NPCL § 102(a)(25). However, the SAC is devoid of facts demonstrating that Charny or Steier are key persons, such as any description of their responsibilities within COBA, their control of COBA's activities, expenses, or capital, or their influence over COBA. In addition to the description of Charny's legal representation of COBA, the SAC only alleges that Steier "is former COBA director of Legal Affairs." (SAC ¶ 13.) Therefore, even if COBA lacked a whistleblower policy or such a policy existed and was violated, the SAC does not establish that Charny or Steier could be liable for failing

to adopt a whistleblower policy or ensure compliance with it.

As to Count VIII, the SAC states that "Defendants owed Plaintiff a duty of care under NPCL § 715" (*id.* ¶ 379), and that "Defendants' violations of NPCL § 715 and other provisions sound in tort as negligence *per se.*" (*Id.* ¶ 378.) The SAC makes no other mention of negligence and does not explain what duty of care Steier or Charny owed Plaintiff or how it was breached. The SAC also does not identify the provision of NPCL § 715 that establishes a duty of care.

Accordingly, Plaintiff's motion to add NPCL claims against Charny and Steier is denied as futile.

### D. Breach of Fiduciary Duty (Count IX)

Count IX of the SAC alleges that Charny breached a fiduciary duty to Plaintiff. The SAC does not identify the specific fiduciary duty and states only that "[a]s an attorney retained by the COBA Annuity Fund, Defendant Charny owed a fiduciary duty to Plaintiff, a Trustee of the COBA Annuity Fund." (*Id.* ¶ 382.) The SAC further states that "[Charny] breached his fiduciary duty causing Plaintiff damages." (*Id.* ¶ 383.)

The SAC lacks any factual allegation regarding the basis for any fiduciary duty to Plaintiff. *See, e.g., ICD Cap., L.L.C. v. CodeSmart Holdings, Inc.*, 842 F. App'x 705, 707 (2d Cir. 2021); *Krys v. Butt*, 486 F. App'x 153, 156 (2d Cir. 2012) (finding breach of fiduciary duty claim against defendant insufficient where complaint contained only conclusory allegations that defendant owed plaintiffs a fiduciary duty and failed to state why he owed plaintiffs a duty).

An attorney-client relationship is generally understood to be a fiduciary relationship. *See In re Hayes*, 183 F.3d 162, 168 (2d Cir. 1999). The SAC alleges that Charny "was at all times relevant (and remains as of filing) counsel for various and numerous COBA persons and entities, including COBA, its Board, its agents, and assigns." (SAC ¶¶ 60, 14.) It does not allege that Charny was Plaintiff's counsel. Thus, even if Charny owed the COBA Annuity Fund a fiduciary duty as its counsel, it is not

19

apparent that an attorney-client relationship existed between him and Plaintiff as a trustee, or that he also owed Plaintiff any duty. *See Ello v. Singh*, No. 05-CV-9625 (KMK), 2006 WL 2270871, at *4 (S.D.N.Y. Aug. 7, 2006) (noting that unless expressly agreed otherwise, an attorney representing a fund or union does not also represent a trustee); *see also Toussaint v. James*, No. 01-CV-10048 (SHS), 2003 WL 21738974, at *8 (S.D.N.Y. July 25, 2003) (citations omitted) ("Counsel for pension plans do not, *ipso facto,* become counsel for trustees, as a pension plan is considered a distinct legal entity and may sue or be sued in its own capacity.").

Moreover, even if Charny ever owed a fiduciary duty to Plaintiff as a member of COBA Annuity Fund, Plaintiff obtained conflict counsel in or around September 2019, thus eliminating any such fiduciary duty as of that point. (*See* SAC ¶¶ 261-63, 291-92.)

Accordingly, Plaintiff's breach of fiduciary duty claim against Charny is futile and Plaintiff's request to add this claim to his pleading is denied.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Amend the Complaint and Add Parties is denied to the extent that it seeks to add Charny and Steier as defendants. The Motion is granted in all other respects. Plaintiff is directed to file a second amended complaint consistent with this Decision and Order. The second amended complaint shall not include causes of action against Charny or Steier.

**SO ORDERED:**

*Peggy Kuo*
PEGGY KUO
United States Magistrate Judge

Dated: September 30, 2022
Brooklyn, New York