UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ALBERT CRAIG,

                         Plaintiff,

                -against-

THE CITY OF NEW YORK, CORRECTION
OFFICER ELIAS HUSAMUDEEN, FORMER
COMISSIONER CYNTHIA BRANN, DOC
EXECUTIVE DIR. MARIA GUCCIONE,
DEPUTY WARDEN DESIREE HILL, MARC
A. STEIER, ATTORNEY NATHANIEL K.
CHARNY, and FORMER ACTING
PRESIDENT (COBA),

                         Defendants.

**MEMORANDUM AND ORDER**
20-CV-2152 (LDH) (PK)

Albert Craig ("Plaintiff"), proceeding pro se, brings the instant action against the City of New York, Former New York City Department of Correction ("DOC") Commissioner Cynthia Brann, DOC Executive Director of Labor Relations, Maria Guccione, DOC Deputy Warden, Desiree Hill ("Municipal Defendants"), and DOC Correction Officer Elias Husamudeen (collectively, "Defendants"). He asserts federal claims, pursuant to 42 U.S.C. § 1983, for violations of his rights under the First and Fourteenth Amendments of the United States Constitution against all Defendants. Plaintiff also asserts New York state law claims of negligence pro se and a violation of NY N-PCL 715-b against Husamudeen and tortious interference with contract against Husamudeen and Guccione. Municipal Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Section 1983 claims against them, as well as the tortious interference with contract claim asserted against Guccione.

1

Husamudeen moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Plaintiff's federal and state claims against him.

## BACKGROUND[1]

Plaintiff is a corrections officer with the DOC who, in 2009, ran for election to serve as a delegate for his union, the Corrections Officers' Benevolent Association, Inc. ("COBA"). (*See* Second Am. Compl. ("SAC") ¶¶ 20–22, ECF No. 94.) Plaintiff was subsequently re-elected to that position in 2013 and appointed to a vacant seat on COBA's executive board. (*Id.* ¶¶ 22–23.) Thereafter, in 2016, Plaintiff successfully ran for and was elected to serve on COBA's executive board and appointed as a COBA Annuity Fund Trustee. (*Id.* ¶¶ 25–26, 86.)

Plaintiff has "continuously engaged in union activity, including by speaking on issues of public concern as a citizen and union leader on his social media accounts, at union events, and at other public/union forums." (*Id.* ¶ 63.) Notably, Plaintiff spoke at New York City Board of Correction ("BOC") meetings beginning in July 2016. (*Id.* ¶ 64.) At those meetings, Plaintiff took "strong positions in favor of jail reform and [] fought for the well-being of officers and inmates alike, for example by demanding that NYC put aside politics to make workplace safety a policy priority for New York City jails." (*Id.* ¶ 65.) This behavior caused some BOC members to dislike him as a representative. (*Id.* ¶¶ 70, 76.) Husamudeen told Plaintiff that DOC management "disliked Plaintiff" and that "they would prefer not to deal with him as a union leader." (*Id.* ¶ 76.) Husamudeen also told Plaintiff that this was the reason why he "started to make sure that Plaintiff was kept away from union activities." (*Id.* ¶ 77.)

In January 2019, Husamudeen and his attorneys falsely reported the value of restitution that was negotiated in connection with the criminal case against the union's former president,

---

[1] The following facts are taken from the Second Amended Complaint and are assumed to be true for the purpose of this memorandum and order, unless otherwise indicated. (ECF No. 94.)

Norman Seabrook. (*Id.* ¶ 88–90.) According to the Second Amended Complaint, this was done in an apparent attempt to steal $1,000,000 from COBA. (*Id.* ¶ 88–90.) The restitution at issue was for $7,000,000, but Husamudeen attempted to convince members of COBA's executive board to sign a resolution acknowledging that the restitution "deal" was for $6,000,000. (*Id.*) Plaintiff raised alarm about this discrepancy with fellow board members, and refused to sign the resolution. (*Id.* ¶ 99.) Plaintiff's refusal to sign the resolution caused those who had already signed the resolution to cross-out their signatures. (*Id.* ¶ 100.)

Shortly after the resolution vote, Plaintiff helped Tony Herbert, a political candidate, shoot videos in connection with Herbert's campaign for public office. (*Id.* ¶¶ 109–10.) Plaintiff subsequently posted to his personal Facebook page. (*Id.* ¶ 110.) Plaintiff did not use any COBA resources to engage in this activity. (*Id.* ¶¶ 111.) On February 27, 2019, Husamudeen "unilaterally removed Plaintiff from his COBA assignments." (*Id.* ¶ 113.) Husamudeen indicated that his actions were prompted by Plaintiff's non-COBA-sanctioned endorsement of a political candidate. (*Id.* ¶¶ 110–14.)

At around this same time, several COBA board members learned about a trip to the Bahamas taken by Husamudeen and paid for by a COBA vendor that had not been disclosed to the board. (*Id.* ¶ 116.) The financial secretary of COBA's executive board, Amelia Warner, was asked to investigate these allegations, and on February 28, 2019, she sent an e-mail to the entire executive board, the trustees, and Husamudeen, "raising an alarm about the trip and explaining the violations they triggered in detail." (*Id.* ¶ 119.) Plaintiff sent an email to the same recipients in support of Warner. (*Id.* ¶ 121.)

After Plaintiff sent the email supporting Warner, Husamudeen called Plaintiff to tell him that he was "sending [Plaintiff] back," to the Robert N. Davoren Complex ("RNDC"), on Rikers

3

Island, where Plaintiff worked as a corrections officer. (*Id.* ¶¶122–25.) Plaintiff was informed later that day by Guccione that he should report to RNDC the following day. (*Id.* ¶ 126.) Plaintiff was permitted to use two months of vacation time, which gave him a two-month reprieve from reporting to RNDC. (*Id.* ¶ 134.) Plaintiff used this time to "report these and other suspicious activities to external agencies." (*Id.* ¶¶ 135.) Plaintiff also filed charges with COBA against Husamudeen. (*Id.* ¶ 137.) According to the Second Amended Complaint, Defendant Husamudeen "personally managed administration of these charges with COBA Recording Secretaty Danny Palmieri, in violation of governing rules." (*Id.* ¶¶ 138.) Plaintiff's charges were dismissed and his request for an independent investigation was denied. (*Id.* ¶¶ 141–43.)

Thereafter, Plaintiff was increasingly shut out from union activities. (*Id.* ¶¶ 157–65.) In August 2019, Husamudeen demanded that Plaintiff return his COBA-issued electronics, EZPass, credit card, and vehicle, benefits to which he was entitled as a Board member. (*Id.* ¶ 166.) That same month, Plaintiff alleges that Husamudeen and Guccione denied him union release time. (*Id.* ¶¶ 171–75.) Husamudeen also "would delay the start time of scheduled [b]oard meetings so that Plaintiff would be forced to leave for his DOC work by the time the meeting started." (*Id.* ¶ 176.)

In the Fall of 2019, Desiree Hill, the acting deputy warden, "screamed at and berated Plaintiff," told him that he was no longer a COBA officer, threatened to suspend him for possessing a COBA-issued cellphone, and called him "an old Mother Fucker." (*Id.* ¶ 183.) When Plaintiff complained, the acting warden, Joseph Caputo took no corrective action. (*Id.* ¶ 185.) Plaintiff asserts that in October 2019, he appealed directly to DOC Commissioner Brann to complain about some of this perceived harassment. (*Id.* ¶ 223.) Brann responded that she had looked into his complaint and determined that the "facts do not support his assertion" that he was

4

being "retaliated against because [he] is a vocal critic of this department." (*Id.* (brackets in original).)  Plaintiff claims that Brann and Guccione interfered in COBA's June 2020 election to support Husamudeen over Plaintiff.  (*Id.* ¶¶ 306–08.)  As a result, Plaintiff lost his position as Annuity Fund Trustee and his union career.  (*Id.* ¶ 335.)

## STANDARD OF REVIEW

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A court deciding whether to grant a motion to dismiss must "draw all reasonable inferences in [the plaintiff's] favor, assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)) (internal citation omitted).  "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.  Further, a court is not obligated to accept a plaintiff's "conclusory allegations or legal conclusions masquerading as factual conclusions." *Faber*, 648 F.3d at 104 (quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008)).[2]

---

[2] Typically, pro se complaints are held to less stringent standards than pleadings drafted by attorneys and the Court is required to read a pro se complaint liberally and interpret it as raising the strongest arguments it suggests.  *Sealed Plaintiff v. Sealed Defendant #1*, 537 F.3d 185, 191–93 (2d Cir. 2008).  The Court declines to read Plaintiff's Second Amended Complaint with the same liberal construction as other pro se plaintiffs because Plaintiff was represented by counsel when he filed his complaint in this case.  *Cf. Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) (noting that "the degree of solicitude may be lessened where the particular pro se litigant is experienced in litigation" and "a lawyer representing himself ordinarily receives no such solicitude at all").

## DISCUSSION

### I. Count One: Deprivation of Plaintiff's Fourteenth Amendment Due Process Rights

Municipal Defendants argue that Plaintiff's due process claim should be dismissed because the Second Amended Complaint fails to plausibly allege that Municipal Defendants deprived him of a property interest and because he has an adequate post-deprivation remedy available to him. (Municipal Defs.' Mem. of L. in Supp. of Mot. to Dismiss ("Municipal Defs.' Mem.") at 11–12, ECF No. 117-1.) The Court Agrees.

Section 1983 prohibits individuals acting "under color" of state law from depriving another person of a right secured by federal law. *See* 42 U.S.C. § 1983. To assert a violation of Fourteenth Amendment procedural due process rights under Section 1983, a plaintiff must "first identify a property right, second show that the [government] has deprived him of that right, and third show that the deprivation was effected without due process." *Local 342, Long Island Pub. Serv. Employees, UMD, ILA, AFL–CIO v. Town Bd. of Huntington,* 31 F.3d 1191, 1194 (2d Cir. 1994) (internal quotation marks and citation omitted). In other words, a plaintiff must allege that he or she was deprived of " 'an opportunity . . . granted at a meaningful time and in a meaningful manner' for [a] hearing appropriate to the nature of the case." *Boddie v. Connecticut,* 401 U.S. 371, 378 (1971) (internal quotation marks and citation omitted).

When a plaintiff brings a procedural due process claim "[b]ased on random, unauthorized acts by state employees," the state satisfies the Fourteenth Amendment's procedural due process requirements "so long as it provides a meaningful post-deprivation remedy." *Rivera-Powell v. N.Y.C. Bd. of Elections*, 470 F.3d 458, 465 (2d Cir. 2006). An Article 78 mandamus proceeding in New York State court "is a perfectly adequate postdeprivation remedy." *Grillo v. N.Y.C.*

6

*Transit Auth.*, 291 F.3d 231, 234 (2d Cir. 2002) (internal quotation marks and citation omitted). Therefore, where a plaintiff "was free to bring an Article 78 mandamus proceeding in New York State court" but did not, generally the plaintiff "cannot now be heard to complain of a denial of procedural due process." *See Nenninger v. Port Jefferson*, 509 F. App'x 36, 39 n.2 (2d Cir. 2013).

Here, Plaintiff alleges that his deprivation stemmed from individual actions taken by Husamudeen. For example, Plaintiff alleges that Husamudeen took away Plaintiff's Union release time, which in turn meant that Plaintiff had to return to his position as a Corrections Officer full time. (*See* SAC ¶¶ 122, 136.) He also alleges that Husamudeen blocked Plaintiff from using his COBA office and "stated that if Plaintiff wanted anything from Plaintiff's COBA office, Plaintiff would have to go through [Husamudeen]." (*Id.* ¶ 163.) In short, Plaintiff's alleged deprivations are based on random unauthorized acts by a state employee. Conspicuously absent from the Second Amended Complaint is any allegation that Plaintiff brought a proceeding pursuant to Article 78 in connection with the alleged deprivations of his union release time. Because an Article 78 hearing in New York State court is available to Plaintiff, and he does not allege that he has sought an Article 78 hearing, he cannot sustain a procedural due process claim.[3] *Orange Lake Assocs. v. Kirkpatrick*, 825 F.Supp. 1169, 1179 (S.D.N.Y.1993) ("Since Plaintiff's claim in this case is procedural, an article 78 hearing was available in state court and there can be no procedural due process violation.").

---

[3] For the same reason, Plaintiff's claim that the City of New York deprived him of his liberty interest under the Fourteenth Amendment fails. *See Attallah v. N.Y. Coll. of Osteopathic Med.*, 94 F. Supp. 3d 448, 455 (E.D.N.Y. 2015) ("Generally speaking, the availability of an Article 78 proceeding bars seeking relief under Section 1983 when there is an adequate state post-deprivation procedure to remedy a random or arbitrary deprivation of property or liberty.").

7

## II.     Count Two: First Amendment Retaliation

Municipal Defendants maintain that Plaintiff fails to plausibly allege that they engaged in retaliation in violation of the First Amendment because no causal inference may be drawn between his alleged protected speech and Municipal Defendants' alleged retaliation. (Municipal Defs.' Mem. at 13–16.) Husamudeen, for his part, argues that he cannot be held liable for any retaliation under the First Amendment because the Second Amended Complaint does not allege that he acted under the color of state law, as required for a Section 1983 claim. (Def. Husamudeen's Mem. of L. in Supp. of his Mot. to Dismiss ("Def. Husamudeen's Mem.") at 3, ECF No. 120-1.) The Court agrees with Defendants.

The First Amendment prohibits retaliation by state officials against individuals for the exercise of free speech rights. *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To state a First Amendment retaliation claim pursuant to Section 1983, a plaintiff must allege (1) that the speech at issue is conduct protected by the First Amendment; (2) that the defendant took adverse action against the plaintiff; and (3) a causal connection between the adverse action and the protected speech. *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (internal citation omitted).

Here, Plaintiff's allegations in his Second Amended Complaint easily satisfy the first element of Plaintiff's First Amendment retaliation claim. He alleges that after his election to the COBA executive board in 2016, he continuously engaged in union activity, including by speaking on "issues of public concern as a citizen and union leader on his social media accounts, at union events, and at other public/union forums." (SAC ¶ 63.) Among other things, Plaintiff complained in July 2016 and November 2018 about the DOC's failure to take adequate measures to keep corrections officers safe. (*Id.* ¶¶ 63–68, 72.) Retaliation against this sort of speech

violates the First Amendment. *See Clue v. Johnson*, 179 F.3d 57, 60–61 (2d Cir. 1999) ("We believe that activities on behalf of a union faction that necessarily entail a substantial criticism of management raise matters of public concern" as a matter of law).

Plaintiff's claim faulters, however, on the second element. Plaintiff alleges that Husamudeen retaliated against him after Plaintiff raised complaints about Husamudeen's illegal activities and DOC's treatment of corrections officers by revoking his union release time. (SAC ¶¶ 157–65.) But, according to the Second Amended Complaint, Husamudeen revoked Plaintiff's release time in Husamudeen's capacity as COBA president, (*see* SAC ¶¶ 122–25)—in other words, as a labor representative. And, labor representatives, including union presidents, are not state actors typically within the reach of Section 1983. *Peres v. Oceanside Union Free Sch. Dist.*, 426 F. Supp. 2d 15, 24 (E.D.N.Y. 2006) ("Labor representatives . . . are generally not considered state actors.").

To be sure, "a private actor acts under color of state law when the private actor is a willful participant in joint activity with the State or its agents." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (internal quotation marks and citations omitted). Absent from Plaintiff's allegations, however, are any facts that would support an inference that Defendant Husamudeen was "a willful participant in joint activity with" Municipal Defendants. *Id.* None of Plaintiff's allegations, for example, could support a reasonable inference that Husamudeen acted in concert with Municipal Defendants to retaliate against Plaintiff.[4] *Cf. Peres*, 426 F. Supp. 2d at 24 (noting that "there are allegations in the Complaint from which one can infer that [the union defendant] may have [acted in concert with management defendants] to earn preferential treatment, as he allegedly received when he was not reprimanded for his role in [a

---

[4] For the same reason, Plaintiff's claim that Husamudeen interfered with his First Amendment associational rights fails, because Husamudeen is not a state actor.

prior indiscretion]"). Indeed, Plaintiff alleges only that "New York City has a Custom of Improper Bias in favor of its Preferred COBA Leaders," (SAC at 4), "Husamudeen curried favor" with DOC management "based on mutual understanding and agreement," (*id.* ¶ 78), and that "[r]evocation of his full-time release (and other adverse actions taken against him) occurred as the result of joint action by Defendants," (*id.* ¶136). These sorts of conclusory allegations have been rejected as insufficient by the Second Circuit. *Ciambriello*, 292 F.3d at 324 ("A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.").[5] They are also rejected here.

The third element is also inadequately pleaded. That is, Plaintiff's allegations do not support an inference of a causal relationship between Plaintiff's protected speech and Municipal Defendants' conduct. "Causation can be established either indirectly by means of circumstantial evidence, for example, by showing that the protected activity was followed by adverse treatment in employment, or directly by evidence of retaliatory animus." *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003). Plaintiff's allegations support neither theory of causation.

As to temporal proximity, Plaintiff alleges that "[a]s early as March 2019, at DOC, Plaintiff ha[d] been subject to harassment and threats on his union status." (SAC ¶ 181.) Plaintiff alleges that he began speaking out on issues when he was first elected to the COBA board in July of 2016. (*Id.* ¶ 63) Although Plaintiff alleges that he engaged in "continuous" union activity, the lion's share of his allegations concerns his protests against other COBA members. (*Id.*) Indeed, the only allegation specific to his complaints against Municipal

---

[5] Tellingly, the Second Amended Complaint fails to allege facts that would explain why Municipal Defendants would retaliate against Plaintiff for speaking up against Husamudeen's alleged illegal conduct. This omission is particularly problematic given the adversarial relationship characteristic of labor unions and management. *Id.* (observing that the plaintiff's "conclusory allegations of conspiracy ring especially hollow in light of the adversarial relationship between the County and [the union]").

10

Defendants occurred in the fall of 2018, when "Plaintiff strongly addressed DOC's failure to adequately investigate incidents of workplace violence." (*Id.* ¶ 72.) At least four months, and as many as two years, passed between Plaintiff's alleged speech and Municipal Defendants' alleged retaliation. In either case, the connection between Plaintiff's protected activity and Municipal Defendants' conduct is too attenuated to suggest that Municipal Defendants were motivated by retaliatory animus. *See, e.g., Hollander v. Am. Cyanamid Co.,* 895 F.2d 80, 85–86 (2d Cir. 1990) (finding a lack of evidence that an adverse action, taken three months after the plaintiff's EEOC complaint, was in response to the plaintiff's protected activity); *Morris v. Lindau*, 196 F.3d 102, 113 (1999) (stating that "no inference of causation [was] justified," when two years had elapsed between the protected speech and the adverse employment action).

As to direct allegations of retaliatory animus, Plaintiff alleges that "DOC Management disliked Plaintiff and had shown they would prefer not to deal with Plaintiff as a union leader." (*Id.* ¶ 76.) However, "dislike is not an illegal motive." *Monz v. Rocky Point Fire Dist.*, 853 F. Supp. 2d 277, 287 (E.D.N.Y. 2012), *aff'd*, 519 F. App'x 724 (2d Cir. 2013) (holding that "evidence that Plaintiff's relationship with [Defendant] may have been 'hostile,' on its own, is insufficient to establish causation").

Given that Plaintiff's allegations do not support a reasonable inference that he suffered an adverse employment action as a result of Defendants' retaliatory animus, his First Amendment retaliation claim must be dismissed.

### III.   Count Three: Violation of Plaintiff's First Amendment Associational Rights

Municipal Defendants argue that Plaintiff's claim for interference with his associational rights should be dismissed because the Second Amended Complaint fails to raise a plausible inference that any of Municipal Defendants' conduct was sufficiently "substantial" or

"significant" to violate Plaintiff's rights. (Municipal Defs.' Mem. at 17–18.) Here again, the Court agrees.

"[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). The right of "expressive association," as it is often referred, "is especially important in preserving political and cultural diversity and in shielding dissident expression from suppression by the majority." *Id.* Plaintiffs claiming an interference with their expressive associational rights must plausibly allege interference that was "direct and substantial." *Fighting Finest, Inc. v. Bratton*, 95 F.3d 224, 228 (2d Cir. 1996). "Mere incidental burdens on the right to associate do not violate the First Amendment[.]" *Tabaa v. Chertoff*, 509 F.3d 89, 101 (2d Cir. 2007).

Here, any burden on Plaintiff's associational rights inflicted by Defendants appears only indirectly related to his association with COBA. Plaintiff alleges that Municipal Defendants interfered with his associational rights by "[blocking] Plaintiff from conducting, continuing, and growing his associative activities, including with a budding minority group within COBA that Plaintiff was gathering against a long-dominant corrupt group within COBA." (SAC ¶ 351.) As an example, Plaintiff alleges that that Husamuseen and Benny Boscio (the current president of COBA), were given special access to conduct union campaign activities at DOC facilities to conduct their COBA Board campaigns, "to the disadvantage of other campaigns." (*Id.* ¶ 309.) Plaintiff alleges, by contrast, that he was limited to conducting his own campaign activities in DOC locker rooms. (*Id.* ¶ 317.) However, the Second Amended Complaint fails to allege how his association with COBA caused him to suffer these purported injuries, rather than mere

12

reprisal from Defendants' personal disdain for him. As the Second Circuit has observed in an analogous case, "[t]hough such inhibiting conduct might make it more difficult for [Plaintiff] to exercise [his] freedom of association, this consequence does not, without more, result in a violation of the First Amendment." *Fighting Finest*, 95 F.3d at 228 (affirming dismissal of First Amendment association claim where NYPD prohibiting organization members from posting notices on NYPD premises did not "*directly* and substantially interfere" with the rights of its members to exercise their freedom of association) (emphasis added).

Moreover, granting some union campaigns "special access" to parts of DOC facilities constitutes, at best, an incidental burden on Plaintiff's right to associate with COBA. *Cf. Tabbaa*, 509 F.3d at 102 (holding that the plaintiffs, who were detained for a lengthy period of time, interrogated, fingerprinted, and photographed "suffered a significant penalty, or disability, solely by virtue of associating" a conference the government believed would include individuals associated with terrorist organizations). Therefore, Plaintiff has failed to state a plausible claim that Defendants interfered with his associational rights under the First Amendment.

## IV. Remaining Claims[6]

Plaintiff also alleges several claims under New York State law. However, because the Court has dismissed Plaintiff's claims under federal law, it "decline[s] to exercise supplemental jurisdiction over [Plaintiff's] state law claims [because] it has dismissed all claims over which it has original jurisdiction." *Kolari v. N.Y. Presbyterian Hosp.*, 455 F.3d 118, 121–22 (2d Cir.

---

[6] Plaintiff appears to plead a Section 1983 municipal liability claim against the City of New York stemming from its alleged "informal NYC policy/practice/custom" of, among other things, "taking adverse action against disfavored union members at DOC." (*See* SAC, ¶¶ 186, 190, 198, 211, 227.) Given Plaintiff's failure to adequately plead a deprivation of his constitutional rights, this claim must also be dismissed. *Martinez v. Muentes*, 340 F. App'x 700, 702 (2d Cir. 2009) ("A municipality cannot be liable for acts by its employees which are not constitutional violations." (internal quotation marks and citation omitted)).

13

2006) (quoting 28 U.S.C. § 1367(c)(3)) (internal quotation marks omitted) ("If the federal law claims are dismissed before trial . . . the state claims should be dismissed as well.").

## CCONCLUSION

For the foregoing reasons, Defendants' motions to dismiss Plaintiff's Second Amended Complaint are GRANTED. Because Plaintiff was represented by counsel when he first filed this action, his complaint does not retain the special solicitude normally afforded to pro se plaintiffs. In any event, for the reasons stated in this memorandum and order, Plaintiff's Second Amended Complaint provides no "indication that a valid claim might be stated." *Pierre v. Capital One Financial Corp.*, 21-CV-30 (PKC) (JRC), 2022 WL 801321, at *6 (E.D.N.Y. Mar. 6, 2022) (internal quotation marks and citation omitted) (denying leave to amend where pro se plaintiff already amended her complaint twice). Accordingly, Defendants' motions to dismiss are granted without leave to amend.

SO ORDERED.

Dated: Brooklyn, New York  /s/ LDH
     March 29, 2024  LASHANN DEARCY HALL
                                                                        United States District Judge